624 So.2d 897 (1993)
Vincent DeSALVO and Jack Harris
v.
STATE of Louisiana and the Department of Public Safety and Corrections.
No. 92-CA-2882.
Supreme Court of Louisiana.
September 3, 1993.
*898 Howard P. Elliott, Foye L. Lowe, Jr., Baton Rouge, for applicant.
Vincent J. DeSalvo, Jack P. Harris, Baton Rouge, Richard P. Ieyoub, Atty. Gen., James M. Ross, Asst. Atty. Gen., for respondent.
Robert E. Winn, Raymond P. Ward, New Orleans, for amicus curiae, State Farm Mut. Auto Ins.
DENNIS, Justice.[*]
The crucial question in this case is whether a law which prohibits disclosure of state motor vehicle accident reports to anyone except a party to an accident, his or her representative, attorney and insurer, the press, and contractors for on-line driving records, violates the First Amendment rights of lawyers engaged in advertising who seek to gather information from the reports targeting potential clients for mass direct mail solicitations. The trial court declared the law unconstitutional as violative of the state constitutional right of equal protection of the laws. Although that court did not reach the plaintiffs' First Amendment challenge, it indicated that the law may be unconstitutional on this ground also. The State of Louisiana and Department of Public Safety and Corrections appealed, and the plaintiffs re-urged all of their constitutional challenges, including their First Amendment attack. We reverse.
Lawyer advertising is in the category of constitutionally protected commercial speech. The First Amendment permits a state to impose restrictions on the time, place and manner of commercial advertising, as with regard to other varieties of speech, provided such restrictions are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information. The law in question meets all of these requirements. The law is *899 content neutral; it does not seek to regulate or censor lawyer advertising messages. The law leaves open all channels of lawyer advertising, including direct mail solicitations. The state's significant interest in protecting the right to privacy of individuals and their freedom from unnecessary public scrutiny is substantially furthered by the law. For similar and additional reasons hereinafter assigned, the law does not violate the state constitutional right of equal protection of the laws or right to examine public documents. La. Const.1974, Art. I, § 3; Art. XII, § 3.

BACKGROUND
The driver of a vehicle involved in an accident resulting in injury, death, or property damage in excess of $100 is required to file an accident report with the Department of Public Safety or, if the accident occurred in a city, with the city's police department. La.R.S. 32:398(A)-(D). Police departments are required to forward such reports to the state Department of Public Safety. Id. (D)(3). Formerly, the state police, any local police department, or any sheriff's office was required to provide copies of accident reports to any interested person upon request. Id. (D)(3) (Supp.1990). The Department was also required to permit any person the age of majority to inspect, copy, or reproduce any accident report as a public record. La.R.S. 44:31 (Supp.1978); See Thornton v. Department of Public Safety, 536 So.2d 595 (La. App. 1st Cir.1988).
By Act 878 of 1992, the legislature added La.R.S. 32:398(H) to provide that the reports of motor vehicle accidents shall be confidential, shall be exempt from the provisions of the public records law, La.R.S. 44:1 et seq., and shall be made available only to the parties to the accident, parents or guardians of a minor who is a party to the accident, the insurers of any party which is the subject of the report, or the succession representatives of those parties, or to the attorneys of the parties or succession representatives, or to a news-gathering organization that requests documents related to the accident. Also, La. R.S. 32:398(H) provides that the public records law, which generally requires disclosure of state records to the public, shall not apply to vehicular accident reports but that the state may sell them or "other driving record information to consumers of on-line driving records under written contract." Id.
The plaintiffs, attorneys who previously obtained the names and addresses of parties to auto mishaps from the accident reports for direct mail solicitations, brought this action for a judgment declaring Act 878 of 1992 unconstitutional, contending that the law, by prohibiting their access to accident reports, denied them equal protection of the laws in violation of Article I, § 3 of the state constitution, violated their First Amendment right to commercial speech, and denied them the right to examine public documents in violation of Article XII, § 3 of the state constitution. After a hearing on the merits, the district court rejected the plaintiffs' claim that their state constitutional right to inspect public documents had been violated. However, the court declared the law unconstitutional as violative of the plaintiffs' state equal protection rights. Although the trial court did not formally reach the First Amendment issue, it plainly indicated that it found merit in the argument. The defendants appealed. La. Const.1974, Article V, § 5(D)(1).

I.
As a general rule, the First Amendment provides that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). With respect to noncommercial speech, the Supreme Court has sustained content-based restrictions only in the most extraordinary circumstances. See Consolidated Edison Co. v. Public Service Comm'n of New York, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); Stone, Restrictions of Speech Because of its Content: The Peculiar Case of Subject-Matter Restrictions, 46 U.Chi.L.Rev. 81, 82 (1978). By contrast, regulation of commercial speech based on content is less problematic. In light of the greater potential for deception or confusion in the context of certain advertising messages, and the greater objectivity and hardiness of commercial speech, content-based restrictions on commercial *900 speech may be permissible. Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 771, n. 24, 96 S.Ct. 1817, 1830, n. 24, 48 L.Ed.2d 346 (1976). Lawyer advertising is in the category of constitutionally protected commercial speech. Shapero v. Kentucky Bar Assn., 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988); See Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).
In Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court stated that the constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. Id. at 563, 100 S.Ct. at 2350. The Court then adopted a four-part analysis for assessing the validity of content-based restrictions on commercial speech as distinguished from more fully protected speech: (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it, (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. Id., at 563-566, 100 S.Ct. at 2350-2351.
A less stringent test applies, however, when the regulation does not flatly prohibit or restrict commercial speech because of its content but indirectly results in a stricture upon the flow of information or ideas because of a government measure seeking a goal independent of the communicative content or impact of the speech. The Court has indicated that restrictions on the time, place and manner of commercial advertising may be imposed, as with regard to other varieties of speech, provided "that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." Virginia Pharmacy Board, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976), comparing Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); with Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); and Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); See also, Bates, 433 U.S. at 384, 97 S.Ct. at 2709.
Applying these principles, we conclude that Act 878 of 1992 is valid as a reasonable time, place, and manner regulation. The law meets all three of the requirements set forth in the Supreme Court's decisions.
First, the law meets the time, place or manner requirement that the regulation "may not be based upon either the content or subject matter of speech." Regan v. Time, Inc., 468 U.S. 641, 648, 104 S.Ct. 3262, 3266, 82 L.Ed.2d 487 (1984) (quoting Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 648, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981); Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980)). It is not disputed that the law's ban on disclosure of vehicular accident reports is content neutral and is not being applied because of disagreement with the message which the plaintiffs wish to disseminate to persons identified in the accident reports. Second, the statute was not faulted, nor could it be, on the ground that it failed to "leave open ample alternative channels for communication of the information." Regan, 468 U.S. at 648, 104 S.Ct. at 3266 (quoting Heffron, 452 U.S. at 648, 101 S.Ct. at 2564; Virginia Pharmacy Board, 425 U.S. at 771, 96 S.Ct. at 1830). In fact, the law leaves open all channels of lawyer advertising, including direct mail solicitations.
*901 Third, the law "serve[s] a significant governmental interest." Regan, 468 U.S. at 648, 104 S.Ct. at 3266 (quoting Heffron, 452 U.S. at 649, 101 S.Ct. at 2565; Virginia Pharmacy Board, 425 U.S. at 771, 96 S.Ct. at 1830). The statute narrowly focuses on the state's substantial interest in protecting the right to privacy of individuals, La. Const. Art. I, § 3, which includes their right to be "let alone," Itzkovitch v. Whitaker, 115 La. 479, 482, 39 So. 499, 500 (1905), and to be free from "unnecessary public scrutiny." Trahan v. Larivee, 365 So.2d 294, 300 (La.App. 3d Cir.1978); Devlin, Privacy and Abortion Rights Under Louisiana State Constitution: Could Roe v. Wade be Alive and Well in the Bayou State, 51 La.L.Rev. 685, 691-92. The plenary power of the legislature, in exercising the police power of the state, to make all laws necessary and proper to that end is broad and sweeping. See, Frisby v. Schultz, 487 U.S. 474, 484, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) ("The State's interest in protecting the well being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."). Pursuant to this power, the legislature may classify certain documents containing the accumulation of sensitive information about a person as confidential and exempt them from general public inspection. Legislation which insures that motor vehicle accident reports will not be disclosed except to the parties to an accident, their legal representatives, attorneys and insurers, the press, and insurance rate-making entities, serves a legitimate and substantial purpose in protecting individuals' right to privacy while reasonably accommodating the interests of the public in newsworthy public documents, the press in news-gathering and the insurance industry in rate-making information.
We conclude, therefore, that because of the state's substantial interest in assuring the privacy of its citizens, because amended La. R.S. 32:398 is an appropriately narrow means of furthering this interest and does not affect the content of any communication, and because the statute preserves ample alternative channels of communication, the law does not violate the plaintiffs' First Amendment right to engage in lawyer advertising.

II.
We conclude that La.R.S. 32:398, as amended by Act 878 of 1992, does not deny plaintiffs equal protection of the laws in violation of Article I, § 3 of the 1974 Louisiana Constitution for virtually the same reasons that it does not violate the First Amendment. Article I, § 3 provides: "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
In Sibley v. Board of Supervisors, 477 So.2d 1094, 1107-1108 (La.1985), this court held that Article I, § 3 commands courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification reasonably furthers a legitimate state purpose; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Because the law does not establish any classification based on race, religion, birth, sex, culture, physical condition, or political ideas or affiliations, the plaintiffs' challenge does not invoke our strict or heightened scrutiny under Article I, § 3. Therefore, the plaintiffs have the burden of demonstrating that they are disadvantaged by a legislative classification which is unreasonable because it does not further any legitimate state interest. In deciding that the law does not violate the plaintiffs' First Amendment rights, we concluded that the state carried its burden of *902 showing that the statute furthers the significant state interest in protecting the right to privacy of individuals. Consequently, it necessarily follows that the plaintiffs failed to carry their onerous burden of proving the opposite, negative proposition that the law does not further any legitimate state interest. Furthermore, we concluded in our First Amendment analysis that the law reasonably furthered the state's legitimate objectives in adjusting the conflicts between the various public and private interests affected by the legislation. Consequently, it is evident that the plaintiffs did not show that any of the classifications drawn by the statute failed to further a legitimate state interest.

III.
Article XII, § 3 of the 1974 Louisiana State Constitution provides that: "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." This court has held that this provision must be construed liberally in favor of free and unrestricted access to public documents, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984). In the present case, we conclude that La.R.S. 32:398(H), added by Act 878 of 1992, specifically and unequivocally provides that the reports of motor vehicle accidents shall be confidential, shall be exempt from the provisions of the public records law, and shall be made available only to certain classes of persons. With respect to the plaintiffs, lawyers seeking to inspect the accident reports for commercial advertising purposes, the statute clearly and unambiguously bars access. Accordingly, we affirm the trial court's rejection of the plaintiffs' claims based on this ground.

IV.
The plaintiffs argued that La.R.S. 32:398(H) interferes with this court's power to regulate the practice of law and will encourage frivolous litigation because attorneys will have to confect contingent fee contracts without carefully evaluating claims before they may obtain accident reports. The short answer to this contention is that there is nothing in the statute, other laws, or the rules of this court which prevents a party to an accident from engaging an attorney, orally or in writing, with or without compensation, for the limited purpose of obtaining the accident report and giving prompt, efficient and economical advice or legal services to the client.

DECREE
For the reasons assigned, La.R.S. 32:398(H), added by Act 878 of 1992, is not unconstitutional for any reason assigned by the trial court or argued by the plaintiffs herein. Accordingly, the judgment of the trial court is reversed.
REVERSED.
WATSON, J., concurs and assigns reasons.
KIMBALL, J., dissents and assigns reasons.
WATSON, Justice, concurring.
Traffic accident reports are public records, and the public should be able to see those records, particularly since the legislation gives them to the press. Thornton v. Department of Public Safety, 536 So.2d 595 (La.1984). The access restrictions in Act 878 of 1992 set a dangerous and questionable precedent.
Nevertheless, I respectfully concur in the result reached by the majority because the plaintiffs have not shown what constitutional right, if any, has been violated.
KIMBALL, Justice, dissenting.
I respectfully disagree with the majority opinion that La.Rev.Stat. 32:389(H), as added by Act 878 of 1992, furthers the legitimate state interest in protecting the rights of privacy of individuals. In my view, any privacy interest the statute purports to protect by denying attorneys access to accident reports is negated by permitting disclosure of the same accident reports to the press for mass media reporting. Thus, while I agree that protection of individuals' rights of privacy is a significant state interest, I do not agree that the legislation in this case furthers that *903 interest. By the majority's own analysis, therefore, La.Rev.Stat. 32:389(H) violates both the First Amendment of the U.S. Constitution and the equal protection clause of the Louisiana Constitution.
Moreover, to the extent the implicit purpose of La.Rev.Stat. 32:389(H) is to limit attorney direct mail solicitation of accident victims, I believe the statute impermissibly intrudes upon this court's exclusive inherent power to regulate the practice of law. La. Const. art. V, § 5(B). See Louisiana State Bar Assoc. v. Edwins, 540 So.2d 294, 298-99 (La.1989); Saucier v. Hayes Dairy Prod., Inc., 373 So.2d 102, 115 (La.1979) (on rehearing). If there is a legitimate need to limit attorney direct mail solicitation, and if this need can be addressed in a manner consistent with the First Amendment, see Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988), Bates v. State Bar of Ariz., 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), I do not believe it is within the ambit of the legislature to impose such restrictions on the practice of law, but rather is within the purview of the courts. Consequently, I would hold La.Rev. Stat. 32:389(H) unconstitutional on the grounds that it violates the separation of powers principle that no one branch of our state government shall exercise powers belonging to the others. La. Const. art. II, §§ 1, 2.
NOTES
[*] Lemmon, J. not on panel. Rule IV, Part 2, § 3.