Merrimack
No. 2001-563

HENRY F. GOODE, JR.

v.

NEW HAMPSHIRE OFFICE OF THE LEGISLATIVE BUDGET ASSISTANT *& a.*

Argued: July 11, 2002
Opinion Issued: November 25, 2002

*Getman, Stacey, Tamposi, Schulthess & Steere, P.A.*, of Bedford (*John A. Curran* on the brief and orally), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Daniel J. Mullen*, associate attorney general, on the brief and orally), for the respondents.

DALIANIS, J. The petitioner, Henry F. Goode, Jr., appeals an order of the Superior Court (*McGuire*, J.) denying his petition for materials under RSA chapter 91-A, the Right-to-Know Law, *see* RSA ch. 91-A (2001 & Supp. 2002), and for attorney's fees. We reverse and remand.

This is the second time this case has reached us on appeal. *See Goode v. N.H. Legislative Budget Assistant*, 145 N.H. 451 (2000) (*Goode I*). In discussing the facts of this case, we incorporate by reference the facts detailed in *Goode I*.

This case arises out of a right-to-know request propounded by the petitioner upon the Legislative Budget Assistant (LBA), in which he sought materials used by the LBA during its audit of the New Hampshire Property and Casualty Loss Program, which was managed by the petitioner in his capacity as risk management administrator. *Id.* at 452. In *Goode I*, we reversed the trial court's ruling that the LBA did not have to disclose to the petitioner items such as preliminary materials and draft audit reports under RSA 91-A:4, IV, because the materials were not in final form. *Id.* at 453. In our decision, we noted that:

> On remand, the LBA may argue that some other statutory exemption, such as that for confidential information, RSA 91-A:5, IV (Supp. 1999), applies to the preliminary draft documents. If the LBA makes such an argument on remand, the trial court after conducting an *in camera* review of either the documents or a *Vaughn* index of them, should weigh the public's interest in disclosure against the government's interest in non-disclosure to determine whether the documents should be disclosed.

*Id.* at 454.

Following remand, the LBA provided the petitioner with all of the documents relating to the 1993 audit of the Property and Casualty Loss Program, except: 1) written records of in-person and telephonic interviews conducted by the LBA; and 2) notes to the file and other internal memoranda drafted by the LBA (collectively referred to as interview materials). The LBA maintained that these documents were exempt from disclosure because they were LBA work papers and confidential.

In June 2001, the petitioner requested that the court conduct an *in camera* review of all audit documentation, and that he be awarded all of his attorney's fees given the LBA's refusal to disclose the materials. Following an *in camera* review, the court ruled that the interview materials were exempt from disclosure because they constitute both work papers, *see* RSA 91-A:4, V (Supp. 2002), and confidential information, *see* RSA 91-A:5, IV (Supp. 2002). In finding the interview materials were exempt as confidential, the court concluded that "the public interest in the thoroughness of government investigations outweighs the public interest in the disclosure . . . ."

Because the LBA disclosed the remaining audit materials following our remand order, the trial court ruled that any Right-to-Know Law analysis as to those documents was moot. The court also expressly declined to review the documents to determine whether any of them should have been disclosed at an earlier time. The court denied the petitioner's request for attorney's fees.

# I

On appeal, the petitioner argues that the court erred in: 1) denying him access to the interview materials; and 2) denying his request for attorney's fees.

The purpose of RSA chapter 91-A is to "ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2001). This legislation helps further our State Constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted. N.H. CONST. pt. I, art. 8. The Right-to-Know Law does not, however, guarantee the public an unfettered right of access to all governmental workings, as evidenced by certain legislatively created exceptions and exemptions. *See Orford Teachers Assoc. v. Watson*, 121 N.H. 118, 120 (1981); *see also Brent v. Paquette*, 132 N.H. 415, 426 (1989) ("[T]he Right-to-Know Law guarantees every citizen the right to inspect all public records except as otherwise prohibited by statute or RSA 91-A:5." (quotation omitted)).

"The interpretation of a statute, including the Right-to-Know Law, is to be decided ultimately by this court." *N.H. Challenge v. Commissioner, N.H. Dep't of Educ.*, 142 N.H. 246, 249 (1997) (quotation omitted). As with other statutes, we adhere to the general rules of statutory construction when interpreting the Right-to-Know Law. *See Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 475 (1996). We look first to the plain

meaning of the words used in the statute and will consider legislative history only if the statutory language is ambiguous. *Union Leader Corp. v. Fenniman*, 136 N.H. 624, 626 (1993). "We resolve questions regarding the law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents." *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 546 (1997) (citation omitted). Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly. *Id.*

There is no dispute that the interview materials are public records under RSA 91-A:4. Rather, the issue for our determination is whether these materials are exempt from disclosure. We begin by considering whether the interview materials are confidential.

## II

RSA 91-A:5 delineates certain records that are exempt from disclosure under the Right-to-Know Law. RSA 91-A:5, IV, in pertinent part, exempts "[r]ecords pertaining to ... confidential ... information." The determination of whether information is confidential for purposes of our Right-to-Know Law is assessed objectively, not based upon the subjective expectations of the party generating that information. *N.H. Housing Fin. Auth.*, 142 N.H. at 553. Even if records are deemed confidential, however, they are not *per se* exempt from disclosure. *See id.* Rather, "[t]o determine whether records are exempt as confidential, the benefits of disclosure to the public must be weighed against the benefits of non-disclosure to the government." *Id.* at 553-54 (brackets, ellipsis and quotations omitted). Absent disputed facts, we review the trial court's balancing of the public's interest in disclosure against the competing interest of non-disclosure *de novo. City of Nashua*, 141 N.H. at 476. In a previous case, we found instructive, but did not adopt as exclusive, the following test employed by the federal courts:

> To show that information is sufficiently confidential to justify nondisclosure, the party resisting disclosure must prove that disclosure is likely: (1) to impair the State's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*N.H. Housing Fin. Auth.*, 142 N.H. at 554 (brackets and quotations omitted). As this test illustrates, "the emphasis should be placed on the potential harm that will result from disclosure, rather than simply

promises of confidentiality, or whether the information has customarily been regarded as confidential." *Id.* (brackets, ellipsis and quotations omitted). The burden of proving whether information is confidential rests with the party seeking non-disclosure. *Id.* at 549.

The purpose of RSA chapter 91-A is to "provide the utmost information to the public about what its government is up to." *City of Nashua,* 141 N.H. at 476 (quotations omitted). As a result, an entity seeking to shield materials from disclosure under the Right-to-Know Law "bears a heavy burden to shift the balance toward nondisclosure." *Id.* Assuming without deciding that the interview materials are confidential records, we do not agree that the government's interest in non-disclosure outweighs the public's interest in disclosure.

The LBA conducted numerous interviews throughout its investigation. It is undisputed that the final audit report references that interviews were conducted with various governmental agencies and that the express purpose of many of these interviews was to obtain information relating to the Property and Casualty Loss Program's effectiveness and its problem areas. As a result, these interviews provided useful information to the overall investigation. Allowing public access to such materials, therefore, helps to ensure accuracy in the audit process by providing the public with an opportunity to evaluate the information collected and verify that it is consistent with the LBA's final audit report. The trial court acknowledged that the disclosure of these materials serves the fundamental purpose of our Right-to-Know Law by shedding light on the activities of the LBA. *See N.H. Housing Fin. Auth.,* 142 N.H. at 554.

In its order, however, the trial court found that the public's interest in these materials was minimal because the interviews were conducted at an early stage of the investigatory process, and because the final audit report was lengthy and detailed. The timing of the interviews is immaterial to the nature of the information contained in those records or its value to the public. Further, contrary to the trial court's finding, many of the interviews were conducted late in the investigation, which undermines the trial court's rationale. Moreover, the length and detail of the final audit report does not minimize the public's interest in reviewing these interview materials, nor reduce the possibility that they contain important information. We, therefore, disagree with the trial court that the public has little interest in reviewing these records.

The LBA argues that disclosing the interview materials will harm the audit process because auditors might refrain from committing their initial thoughts and impressions to paper during an audit, thereby increasing the risk of information loss. It asserts that non-disclosure encourages auditors

to be forthcoming and complete when recording their impressions and comments during the course of the audit. We find this argument unpersuasive. Auditors are regulated by statute and have an obligation to perform audits and report their findings to the proper governmental entities to which they are accountable. *See* RSA 14:30-a, :31, III, :31-a, :31-b (2000). Consequently, auditors will presumably be held responsible for inaccurate or incomplete audits that result from a reluctance to report, thereby decreasing the likelihood of information loss. Moreover, there is no evidence establishing the likelihood that auditors will refrain from being candid and forthcoming when reporting if such information is subject to public scrutiny.

The LBA also argues that non-disclosure of these materials will better ensure that an interviewee will provide full and candid responses to auditor's questions. It asserts that interviewees, who might otherwise provide information about an entity or individual, may be hesitant to do so if they knew that their responses could be released to the public. While there is a possibility that an audit investigation may be compromised if interviewees are reluctant to disclose information to investigators, we do not find that this outweighs the public's interest in disclosure. The LBA, thus, failed to satisfy its burden of proving that the interview materials are sufficiently confidential to justify non-disclosure in this case.

Accordingly, having balanced the competing interests under the facts of this case, we conclude that the government's interest in non-disclosure does not outweigh the public's interest in disclosure. The trial court erred in ruling that the interview materials are exempt from disclosure under RSA 91-A:5, IV.

### III

The trial court also ruled that the interview materials were exempt from disclosure as work papers under RSA 91-A:4, V. We note from the outset that this issue is not likely to arise again given the legislature's recent enactment of RSA 14:31-a, II (Supp. 2002), which expressly provides that "[a]udit work papers and notes are not public records." The statute defines "work papers" as including, but "not limited to, all preliminary drafts and notes used in preparing the audit report." *Id.* We now turn to RSA 91-A:4, V, which provides:

> In the same manner as set forth in RSA 91-A:4, IV, any body or agency which maintains its records in a computer storage system may, in lieu of providing original documents, provide a

printout of any record reasonably described and which the agency has the capacity to produce in a manner that does not reveal information which is confidential under this chapter or any other law. *Access to work papers, personnel data and other confidential information under RSA 91-A:5, IV shall not be provided.*

RSA 91-A:4, V (Supp. 2002) (emphasis added). The trial court found that the interview materials were work papers, and therefore exempt from disclosure.

The term "work papers" has not been construed by this court and, until recently, was neither explained nor defined by statute. Thus, we consider the plain meaning of the words used and turn to legislative history only if the language is ambiguous. *Fenniman*, 136 N.H. at 626. One source defines "working papers," as it relates to accounting audits, as "records kept by an independent auditor of the procedures followed, tests performed, information obtained, and conclusions reached in an audit." BLACK'S LAW DICTIONARY 1600 (7th ed. 1999).

The fact that records are "work papers" does not render them categorically exempt from disclosure. Rather, as with other asserted confidential information under RSA 91-A:5, IV, the court must balance the competing interests regarding disclosure and non-disclosure. Unlike RSA 91-A:5, which expressly delineates records that are exempt from disclosure, RSA 91-A:4, V is not an independent exemption provision. By including the phrase "other confidential information under RSA 91-A:5, IV" after referring to "work papers," the legislature merely emphasized that certain materials that are exempt under RSA 91-A:5, IV are not available for public inspection under RSA 91-A:4.

While we agree that "work papers" is a category of confidential information under RSA 91-A:5, IV, there must be a balancing test applied to determine whether they are sufficiently confidential to justify non-disclosure. Otherwise, any document created in preparing an audit report will be automatically exempt from disclosure, even if there is little or no interest in non-disclosure. "An expansive construction of these terms must be avoided, since to do otherwise would allow the exemption to swallow the rule and is inconsistent with the purposes and objectives of RSA chapter 91-A." *N.H. Housing Fin. Auth.*, 142 N.H. at 552-53 (brackets and quotations omitted).

The trial court erred, therefore, in declaring the information exempt under RSA 91-A:4, V. Given our conclusion in part II of this opinion, however, we need not remand for further consideration since we have

already determined that the public's interest in disclosure outweighs the LBA's interest in non-disclosure.

## IV

Finally, the petitioner argues that the trial court erred in denying his motion for full attorney's fees given the LBA's failure to disclose all of the documents in this case.

An award of attorney's fees for a violation of the Right-to-Know Law is set forth in RSA 91-A:8 (Supp. 2002). To award attorney's fees, "the trial court must find that the petitioner's lawsuit was necessary to make the requested information available and that the LBA knew or should have known that its conduct violated the statute." *Goode I*, 145 N.H. at 455; *see also* RSA 91-A:8. The trial court's factual findings are given deference unless the findings are unsupported or legally erroneous. *Goode I*, 145 N.H. at 455.

In *Goode I*, we upheld the trial court's denial of attorney's fees for the LBA's refusal to disclose documents specifically referenced in the final audit report on the grounds that the LBA neither knew nor should have known that its conduct violated the statute. *Id.* We noted, however, that "[o]n remand, if the preliminary materials, including draft audit reports are not exempt from disclosure for some other reason, the trial court can make the necessary findings to determine whether the [petitioner] is entitled to attorney's fees based upon the LBA's failure to disclose these documents." *Id.*

Following remand, the LBA released all of the documents used in preparing the 1993 audit report except for the interview material discussed above. The court noted that by releasing these documents, the LBA waived any privilege it may have concerning them. Nevertheless, the court expressly declined to examine the documents to determine whether any of them should have been disclosed earlier. This decision was erroneous. Regardless of whether the LBA voluntarily disclosed the documents, it was incumbent upon the court to review them to determine whether the petitioner was entitled to attorney's fees under RSA 91-A:8.

Contrary to the LBA's argument, we did not reject the petitioner's request for attorney's fees outright, but only as to the LBA's failure to disclose those documents specifically referenced in the final audit report. It cannot be disputed that the petitioner's lawsuit was necessary to make the LBA audit information available. However, because we do not have the documents before us, we do not decide as a matter of law whether attorney's fees should be awarded. Rather, we reverse the trial court's

decision on this issue and remand with instructions to examine the documents to determine whether the LBA knew or should have known that withholding the information was in violation of RSA chapter 91-A, and whether an award of attorney's fees is in order.

*Reversed and remanded.*

BROCK, C.J., and NADEAU, J., concurred.