868 So.2d 27 (2003)
Dr. Daniel G. KYLE, Louisiana State Legislative Auditor[1]
v.
Scott M. PERRILLOUX, District Attorney of 21st Judicial District Court
No. 2002 CA 1816.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
*28 Jennifer Schaye, Baton Rouge, Counsel for Plaintiff/Appellant Grover C. Austin, CPA, Acting Legislative Auditor.
Scott M. Perrilloux, Amite, Counsel for Defendant/Appellee Scott M. Perrilloux, District Attorney.
Eric L. Pittman, Nicholas J. Muscarello, Jr., Denham Springs, Counsel for Intervenor/Appellee Bryan T. McMahon, doing business as The Ponchatoula Times.
Christopher M. Guidroz, Thomas J. Fischer, New Orleans, Counsel for Amicus Curiae Louisiana Society of Certified Public Accountants.
David A. Woolridge, Jr., Baton Rouge, Counsel for Amicus Curiae Louisiana Press Association, Inc.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
This is an action by the legislative auditor, seeking injunctive relief against the district attorney of the 21st Judicial District, prohibiting him from releasing copies of work papers in his possession, obtained by investigative subpoena from the legislator auditor, and now the subject of public records requests under the Public Records Law, La. 44:1, et seq. The legislative auditor claims that his work papers are specifically exempt from disclosure by virtue of La. R.S. 44:4(6) and by virtue of the records being the subject of grand jury testimony from the auditor who conducted the audit and compiled the work papers. One person requesting the records intervened in this action, and opposes the granting of *29 injunctive relief on the grounds that the records are public records subject to inspection. Additionally, the Louisiana Press Association, Inc., and the Louisiana Society of Certified Public Accountants have submitted amicus curiae briefs. As far as we are able to determine, the issues presented are res novae in this state.

FACTS AND PROCEDURAL HISTORY
On February 27, 2002, the state legislative auditor released his report relating to a limited examination and investigative audit of the clerk of court of Tangipahoa Parish. A copy of the report was received by the defendant/appellee, Scott M. Perrilloux, district attorney for the 21st Judicial District, which includes Tangipahoa Parish. Based upon the content of the report, the district attorney decided to open an investigation for possible criminal charges. On March 12, 2002, a subpoena duces tecum was requested and issued pursuant to the authority of La.C.Cr.P. art. 66, which authorizes a district attorney to move for the issuance of subpoenas "concerning any offense under investigation by him." The subpoena was directed to the legislative auditor, ordering the production of "[a]ny and all working papers, statements, tapes, photographs, video tapes, charts, [and] copies of any pertinent records" relating to the investigative audit. On March 19, 2002, copies of the requested documents (the work papers)[2] were provided by the legislative auditor to the district attorney.
The district attorney presented the results of his investigation to a grand jury in June 2002. Included in the evidence presented was the testimony of Eric Sloan, the assistant legislative auditor who conducted the investigative audit. The grand jury pretermitted the matter, rather than returning either a "true bill" or "not a true bill."
On June 24, 2002, the clerk of court, John J. Dahmer, requested by letter that the district attorney furnish him with "all material in [his] possession relating to the grand jury hearing ... and investigations conducted in reference to same," including "recordings [and] memoranda from the State Legislative Auditor, persons interviewed and information voluntarily issued. [sic]" On June 27, Bryan T. McMahon, the publisher of The Ponchatoula Times, also submitted a public records request to the district attorney, requesting "the file on the recent accusations and grand jury proceedings" relating to the clerk of court. Later that day, the district attorney contacted the legislative auditor's general counsel and advised her of his determination to release the records requested, including the copies of the work papers previously furnished to him in response to the subpoena duces tecum. The following day, the legislative auditor filed a petition for a temporary restraining order, and applied for preliminary and permanent injunctions to prohibit the district attorney from releasing the copies of the work papers to the public. On July 2, 2002, a third public records request was sent to the district attorney by Avery J. Davidson of WAFB TV-9, a Baton Rouge television station, requesting "all documents concerning the grand jury investigation" of the clerk of *30 court, including "work papers from the Louisiana Legislative Auditor's Office."
Following the issuance of the temporary restraining order, the hearing on the application for the preliminary and permanent injunctions was held on July 11, 2002. After hearing the testimony and receiving evidence, the trial court denied the legislative auditor's application for injunctive relief, but stayed the effect of its ruling pending appeal. Its judgment in that regard was signed on July 29, 2002, and this appeal by the legislative auditor follows.

ANALYSIS
Article XII, § 3 of the Louisiana Constitution provides:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. (Our emphasis.)
This provision specifically empowers the legislature to establish such exceptions to access to public documents as it determines are in the public interest. St. Mary Anesthesia Associates, Inc. v. Hospital Service District No. 2 of the Parish of St. Mary, 01-2852, p. 11 (La.App. 1st Cir.12/20/02), 836 So.2d 379, 387, writ denied, 03-0220 (La.3/28/03), 840 So.2d 577. However, the Louisiana Supreme Court has repeatedly emphasized that this constitutional provision "must be construed liberally in favor of free and unrestricted access to public documents, and that access can be denied only when a law, specifically and unequivocally, provides otherwise." DeSalvo v. State, 624 So.2d 897, 902 (La.1993), cert. denied, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386.
The Public Records Law, La. R.S. 44:1, et seq., has a venerable history in our state, having its genesis in Acts 1912, No. 242, before being substantially revised by Acts 1940, No. 195, with later amendments and additions implementing the current constitutional right. It was enacted to implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted. United Financial Services of Baton Rouge, Inc. v. Guste, 555 So.2d 561, 563 (La.App. 1st Cir.1989).
Louisiana Revised Statutes 44:31 provides as follows:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record.
(2) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
As the party seeking injunctive relief and one seeking to prevent disclosure of records which are arguably public records, the legislative auditor bears the burden of proving that the records requested are exempt from the provisions of the Public Records Law. See La. R.S. 44:31(B)(2); La. R.S. 44:35(B); State v. Mart, 96-1584, p. 7 (La.App. 1st Cir.6/20/97), 697 So.2d 1055, 1059. The legislative auditor has invoked La. R.S. 44:4(6) as the primary basis for his claim of exemption of the records at issue. This statute provides, in relevant part:
This Chapter [the Public Records Law] shall not apply:

*31 * * *
(6) To any records, writings, accounts, letters, letter books, photographs or copies or memoranda thereof in the custody or control of the legislative auditor, or to the actual working papers of the internal auditor of a municipality until the audit is complete, unless otherwise provided. (Our emphasis.)
In the alternative, the legislative auditor contends that the documents at issue were brought within the ambit of grand jury proceedings through the testimony of Mr. Sloan, and therefore entitled to the same secrecy to which grand jury testimony and evidence are subject, pursuant to La. C.Cr.P. art. 434(A).
The resolution of this dispute, in our view, hinges upon the proper determination of (1) the custodian of the particular records sought, and (2) whether those records are "public records" within the meaning of the law.

WHO IS THE CUSTODIAN OF THE RECORDS?
La. R.S. 44:1(A)(3) defines "custodian" for purposes of the Public Records Law as "the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records."
It is undisputed that the copies of the work papers at issue are in the physical possession of the district attorney, and that they form part of the records of his office. There is therefore a rebuttable presumption that he is their custodian for purposes of the Public Records Law. State ex rel. Wogan v. Clements, 192 So. 126, 131 (La.App.Orl.Cir.1939), affirmed, 194 La. 812, 195 So. 1 (La.1940).[3] But physical possession is not synonymous with "custody or control." See CII Carbon, L.L.C. v. St. Blanc, 99-1043, p. 5 (La.App. 1st Cir.7/31/00), 764 So.2d 1229, 1232, writ denied, 00-2781 (La.11/27/00), 775 So.2d 1069.[4] Notably, the record before us does not show that the district attorney denied having "custody or control" of the requested records upon receipt of the records requests, nor that he made the required written certification of their "absence" from his custody or control, the reason for such "absence," and their present custodian. La. R.S. 44:34. This supports the presumption that the copies of the work papers in his possession were in his custody or control.
The three records requests were directed to the district attorney for his "file," "all material in [his] possession," and "documents" relating to his investigation, two requests specifically referring to records of the legislative auditor. The intervenor contends that the records it requested, including the copies of the work papers, are public records relating to closed criminal investigation or litigation, and therefore removed from the exemption of La. R.S. 44:3(A)(1), which provides in pertinent part:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, *32 held by the offices of ... district attorneys, ... which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled ....
The legislative auditor contends that because the copies of the work papers were not generated by the district attorney in his own investigation, he cannot properly be considered their custodian. We respectfully beg to differ. Although the district attorney did not prepare the work papers, he obtained copies of them for his investigative file through an authorized investigatory device, and there is no evidence that the copies delivered to him in compliance with the subpoena duces tecum remained in the legal custody or under the control of the legislative auditor. There is nothing in La. R.S. 44:4(6) which suggests that investigative records in the possession of a law enforcement agency or official, otherwise meeting the definition of "public records," lose such quality simply because they are identical to or even photocopied duplicates of work papers and other records of the legislative auditor.[5]
It is important to note that the legislative auditor did not seek to quash the subpoena duces tecum as overly broad, or to obtain a protective order restricting public access to the copies of the work papers or recognizing his custody or control of those copies. The use of compulsory process is always subject to judicial review to prevent abuse and to enforce interests protected by law. And there is no evidence of any inter-agency confidentiality agreement between the legislative auditor and district attorney as to the ownership, custody, or control of the copies of the work papers. The legislative auditor testified that such an agreement exists in standing form between his office and the attorney general.[6]
On the record before us, the legislative auditor has plainly failed to overcome the presumption of the district attorney's custody and control of the copies of the work papers in his file, and has likewise failed to meet the burden of proving that he is the custodian or entitled to control of the copies of the work papers.

ARE THE COPIES OF THE WORK PAPERS "PUBLIC RECORDS"?
Louisiana Revised Statutes 44:1(A)(2)(a) broadly defines "public records" as records having been used, being in use, prepared, possessed, or retained by a public body in its conduct, transaction, work, duty, function, or performance of its business. CII Carbon, 99-1043 at p. 5, 764 So.2d at 1232. But for the exemption granted in La. R.S. 44:4(6), the legislative auditor's work papers would clearly fall within that broad definition. We must decide whether that exemption extends to copies of the work papers which were indisputably "used," "possessed," and "retained for use" by the district attorney.
In acting within his broad authority in the examination of documents and other records, the legislative auditor must "comply with any and all restrictions imposed by law on documents, data, or information deemed confidential by law and furnished *33 to the legislative auditor." La. R.S. 24:513(H). And although the audit reports issued by the legislative auditor are public records as provided by La. R.S. 44:6, "any documents, data, or information furnished the legislative auditor which are deemed confidential by law" are not subject to the Public Records Law. La. R.S. 24:513(F). The phrase emphasized above is significant. On the one hand, it can be interpreted as a reference to La. R.S. 44:4(6), recognizing a broad privilege created by that statute in favor of the legislative auditor. On the other hand, it could also be read as implying that "documents, data, or information" furnished to the legislative auditor which are not deemed confidential under the law might be subject to disclosure.[7] But this issue is not before us, and we therefore decline to address any possible conflict between La. R.S. 24:513(F) and La. R.S. 44:4(6) as they relate to documents in the custody or control of the legislative auditor. It is only necessary for us to determine the character of the copies of the work papers, which we have concluded were in the custody and control of the district attorney.
In determining the character of the shared records at issue, it is necessary to briefly examine the interrelationship between the officials who shared the records. Louisiana Revised Statutes 24:513(G) imposes a duty on local district attorneys to "give assistance to the legislative auditor" in the performance of his work. Louisiana Revised Statutes 24:516(A)(2) requires the legislative auditor to furnish a copy of any audit report disclosing any alleged criminal conduct by a public official or employee to the district attorney of the parish where the offense was committed. In turn, within thirty days of his receipt of such an audit report, the district attorney must advise the chairman of the Legislative Audit Advisory Council of any action taken or which he proposes to take in connection with the alleged illegality. La. R.S. 24:519(B).
The legislative auditor has no authority to prefer criminal charges based upon the results of his audits; such is the responsibility of the appropriate prosecutive officials. It can reasonably be anticipated that a district attorney charged with the responsibility of prosecuting a criminal offense disclosed by an audit would seek access to all investigative material in order to effectively weigh the merits of the case and to secure a conviction.
The legislative auditor urges that the district attorney, in obtaining the issuance of the investigative subpoena, did so with the knowledge that the work papers and copies thereof were exempt from disclosure under La. R.S. 44:4(6). Even assuming this to be true, we fail to see why the converse principle would not apply: by surrendering copies of the work papers (albeit in response to a subpoena) to the custody or control of the district attorney *34 conducting an investigation of possible criminal wrongdoing, the legislative auditor did so with the knowledge that once pending charges are adjudicated or dismissed, or prosecution is not reasonably anticipated or otherwise "settled," those copies become "public records" subject to disclosure under La. R.S. 44:3(A)(1).[8]
The legislative auditor urges that because his office performs investigative functions, at the very least his work papers are exempt from disclosure under La. R.S. 44:3(A)(1) until the matter under investigation is adjudicated or settled from his perspective. We disagree. The legislative auditor is not included in the list of prosecutive, investigative, and law enforcement officials and agencies in La. R.S. 44:3. Despite his factfinding or investigative duties, the legislative auditor and his office's employees performing audits are not law enforcement personnel. State v. Hammond, 97-1677, pp. 6-8 (La.App. 4th Cir.12/30/97), 706 So.2d 530, 533-34. Indeed, this fact was admitted by the legislative auditor several times in his testimony. The legislative auditor admitted in his testimony that the limited examination and audit were complete as to the issues raised therein. The district attorney testified that no criminal litigation was pending as to the issues raised in the audit report and the audit work papers, and that he did not anticipate "any likelihood that there will be criminal charges." Thus, there is nothing upon which the district attorney could base a denial of access to his nonconfidential records under La. R.S. 44:3(A)(1).
We next address the legislative auditor's alternate argument that the copies of the work papers are subject to the secrecy required as part of grand jury proceedings under La.C.Cr.P. art. 434(A). The work papers were "separate" from the grand jury investigation, and were not "part of the grand jury investigation" in the sense of being "connected with" it. See Fryar v. Guste, 371 So.2d 742, 745 (La.1979). They simply constitute documentation of the facts upon which Mr. Sloan's later testimony was based. As such, they do not fall within the ambit of La.C.Cr.P. art. 434(A).
The Louisiana Society of Certified Public Accountants raises the point that the legislative auditor's work papers fall within the accountant-client privilege embodied in La. C.E. arts. 515-17. Similarly, it urges that La. R.S. 37:86 and 37:87 of the Louisiana Accountancy Act, dealing with confidential communications or information divulged to accountants and ownership of accountants' work papers, also set standards against disclosure of the copies of the work papers at issue. But these points are easily disposed of by consideration of who the "client" is. The "client" of the legislative auditor is the legislature, the elected representatives of the public. And the public, through the legislature, *35 has in effect waived any privilege in favor of disclosure of these records by enacting the law applicable to the particular facts present here.[9] Additionally, the Society has failed to address the unequivocal language of La. R.S. 37:95, which provides that "[n]othing in this Part shall apply to... any practices, services, functions, or other actions performed by the duly elected or appointed legislative auditor ... in the discharge of the powers, duties, and functions committed to his office by the state constitution or any statute." Finally, La. R.S. 37:86(A)(2) plainly states that the statute "shall not apply to any audit conducted pursuant to R.S. 24:511 through 521 [the statutes pertaining to the legislative auditor]."
The points made by the legislative auditor and the Society address legitimate concerns and are compelling. But weighed against those valid considerations is the no less valid consideration of openness of public records. While the legislative auditor points out the apparent incongruity between allowing public access to copies of his work papers obtained by a district attorney, yet denying access to the originals still in his possession, any incongruity must ultimately be reconciled in favor of the public's right of access. The preeminent status of the right of access to public records reinforces our interpretation that the records at issue are encompassed within the meaning of public records of the district attorney under La. R.S. 44:3(A)(1), and, as such, constitute an exception "otherwise provided" by law under La. R.S. 44:4(6). Given the factual context of this controversy and the requirement of liberal construction in favor of access to public records, we must resolve it in favor of providing such access.

DECREE
The judgment of the trial court, denying the application of the legislative auditor for preliminary and permanent injunctions, is affirmed.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
When tendered in an effort to cooperate with another governmental investigation, documents produced under subpoena; especially, should not automatically lose their confidentiality from the mandated act of physical transfer alone. In my opinion, to hold that custody of the information is transferred by allowing access will discourage the sanctioned sharing of information between governmental investigative entities. In these troubled times, the public good is not fostered by discouraging valid exchanges of information. Nor is this opinion necessarily dependent on an interpretation of any rule of confidentiality between a certified public accountant and his client. Instead, this case presents different facts. The facts presented show that the documents are no longer confidential.
*36 La. R.S. 44:4(6) allows a public records exemption for the working papers of the legislative auditor, "unless otherwise provided." La. R.S. 44:4(6); see La. R.S. 44:1(2)(a). Presumably, if the legislature had meant to provide a more substantial exemption, it would not have added the phrase, "unless otherwise provided." See, e.g., La. R.S. 44:4(17). I believe that one of the "otherwise" provisions is found in La. R.S. 44:2. "After final disposition" of a legislative investigation, such as the one conducted by the legislative auditor, "the records, writings, accounts, ... or copies thereof, are public records...." La. R.S. 44:2. Another exemption is provided for records pertaining to a "pending criminal litigation," or one that is "reasonably anticipated...." La. R.S. 44:3(A)(1). However, similar to the provision of La. R.S. 44:2, once the criminal litigation is ended, or no longer "reasonably anticipated," the previously protected records lose their exemption. La. R.S. 44:3(A)(1). Now that the audit investigation is complete, and no criminal litigation is pending or contemplated, the working papers of the auditor are no longer exempt from the public records law. For these reasons, I respectfully concur.
NOTES
[1] In January 2003, Dr. Kyle resigned his position. As of this writing, his duties have been assumed by Grover C. Austin, C.P.A., First Assistant Legislative Auditor, as acting Legislative Auditor, pursuant to La. R.S. 24:511(C).
[2] The legislative auditor testified at trial that all of the documents listed in La. R.S. 44:4(6) and those described in the subpoena duces tecum fell into the category of audit "work papers," defined by him as the "raw data" and evidence accumulated during the course of an audit. "Working papers" in the accounting field have been defined as "the records kept by an independent auditor of the procedures followed, tests performed, information obtained, and conclusions reached pertinent to his or her examination." Black's Law Dictionary 1605-06 (6th ed.1990).
[3] In Wogan, the court held that the right of access of the Supervisor of Public Accounts (the predecessor to the legislative auditor) to public records of agencies being audited did not vest him with their "custody or control," so as to prevent their disclosure under the statute equivalent to La. R.S. 44:4(6) at that time.
[4] For example, a custodian may not avoid his responsibility to control public records in his custody by transferring physical possession to another. Alliance for Affordable Energy v. Frick, 96-1763, p. 10 (La.App. 4th Cir.5/28/97), 695 So.2d 1126, 1133. See also Bridges v. Collier, 21 Media L. Rep. 1061 (La. C. D.Ct.Orl.1992).
[5] See La. R.S. 44:1(A)(2)(a) and discussion relative to it, infra.
[6] Conceivably, under such an agreement the district attorney would be required to segregate the work papers as nonpublic records under La. R.S. 44:32(B). But whether such an agreement may legally prevent shared records from being categorized as public records subject to disclosure is an issue which, thankfully, we need not address today.
[7] See, e.g., Goode v. New Hampshire Office of the Legislative Budget Assistant, 148 N.H. 551, 813 A.2d 381 (N.H.2002). The New Hampshire Right-To-Know Law, RSA 91-A, governs the right of access to public records, but exempts certain records pertaining to "confidential" information. In Goode, the New Hampshire Supreme Court held that even if the audit work papers at issue were deemed confidential, they were not per se exempt from disclosure, and a court must apply a balancing test to weigh the benefits of public disclosure against the benefits of nondisclosure. The court rejected the legislative budget assistant's argument that audit investigation would be compromised by interviewees' reluctance to disclose information which might become public, finding it was outweighed by the public's interest in disclosure. Goode, 148 N.H. at 555-56, 813 A.2d at 387. The court did note, however, that a subsequent enactment specifically exempting "[a]udit work papers and notes" made the issue unlikely to arise again. Goode, 148 N.H. at 556, 813 A.2d at 388.
[8] Interestingly, the converse factual situation was involved in State ex rel. Gannett Satellite Information Network, Inc. v. Petro, 80 Ohio St.3d 261, 685 N.E.2d 1223 (Ohio 1997). There, newspaper publishers made public records requests of the Ohio state auditor for his working papers related to an audit of a water service district. The auditor incorporated within his working papers certain records provided by the special prosecutor investigating corruption in a county serviced by the water district. The auditor resisted production of all of the working papers, even though Ohio law classified them as public records subject to disclosure, on the grounds that the records were exempted from disclosure as grand jury materials and investigatory work product of the special prosecutor. In addition to finding that the auditor waived his right to assert exemptions by prior representations of the records' public nature and release of their contents, the Ohio Supreme Court held that "[t]he prosecutor should have been aware that records [he released] which [the auditor] considered in his audit of a public entity would be subject to disclosure" under Ohio's public records law. Petro, 80 Ohio St.3d at 265, 685 N.E.2d at 1227.
[9] See Legislative Joint Auditing Committee v. Woosley, 291 Ark. 89, 93, 722 S.W.2d 581 (Ark.1987), 291 Ark. 89, 722 S.W.2d 581, 583, wherein the Arkansas Supreme Court rejected a similar argument as to confidentiality of "audit work papers" of the Arkansas legislative auditor based upon the Code of Ethics of the American Institute of Certified Public Accountants. It observed that "these accountants work for the public, not private clients" and "[t]he legislature decides what will be made public and it has spoken with the Freedom of Information Act." Woosley, 291 Ark. at 93, 722 S.W.2d at 583. The Society further relies on La. C.E. art. 502(B), providing that a claim of privilege is not defeated by a disclosure which was compelled. Its reliance on that article is likewise misplaced, as it fails to consider that the "client" upon whom the privilege is conferred may waive the privilege, even though the accountant does not.