878 So.2d 650 (2004)
Dr. Daniel G. KYLE Louisiana State Legislative Auditor
v.
LOUISIANA PUBLIC SERVICE COMMISSION and Jack "Jay" Blossman, in His Capacity as Chairman of the Louisiana Public Service Commission East Baton Rouge, LA, and Lawrence St. Blanc, in His Capacity as Secretary of the Louisiana Public Service Commission, East Baton Rouge, LA.
No. 2003 CA 0584.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Jennifer Schaye, Baton Rouge, Counsel for Plaintiff/Appellee Dr. Daniel G. Kyle, Louisiana Legislative Auditor.
Lawrence A. Durant, Baton Rouge, Counsel for Amicus Curiae Louisiana Department of Transportation and Development.
Eve Kahao Gonzales, Amanda H. Smith, Baton Rouge, Counsel for Defendant/Appellant Louisiana Public Service Commission, East Baton Rouge Parish, LA, and Lawrence St. Blanc, in His Capacity as *651 Secretary of the Louisiana Public Service Commission, East Baton Rouge Parish, LA.
Before: WHIPPLE, KUHN, and McDONALD, JJ.
McDONALD, J.
The Louisiana Public Service Commission appeals a trial court judgment issuing a Writ of Mandamus ordering the commission to produce all e-mail for inspection and copying by the Legislative Auditor's office. For the following reasons, the mandamus is recalled.

FACTS AND PROCEDURAL HISTORY
In May 2002, the Legislative Auditor began conducting a performance audit of the Louisiana Public Service Commission ("LPSC" or "the commission") pursuant to the requirements of La. R.S. 24:522. The commission timely provided all information requested by the legislative auditor, made commission employees available to provide information, and, at the request of the Legislative Auditor, wrote to all gas and electric utilities within the commission's jurisdiction requesting that they turn over any and all documents pertaining to certain filings made with the commission.
Following an expansion of the audit, the Legislative Auditor requested that the commission send another letter to the utility companies asking that they make available "any and all documents" requested by the auditor, and that the commission turn over to the auditor all their e-mails. On November 19, 2002, at approximately 1:30 p.m. an investigative auditor was advised by the commission's general counsel that access to the e-mails would have to be delayed until they could be reviewed by counsel to insure that they did not contain privileged material. By letter dated November 20, 2002, the commission's counsel confirmed their position regarding the e-mails, and also reminded the legislative auditor's general counsel that there was a Business and Executive Session of the commission scheduled for November 22, 2002, and requested that any matters for commission decision regarding auditing issues be sent in writing to be placed on the agenda. The Legislative Auditor, by letter of November 20, 2002, requested that he be allowed to address the Business and Executive Session of the commission at their meeting scheduled for November 26, 2002, to discuss the "scope limitations" placed on the audit being conducted by his office.[1]
On November 20, at 10:35 a.m., a Petition for Writ of Mandamus and Rule to Show Cause was filed in the Nineteenth Judicial District Court by the Legislative Auditor alleging, inter alia, that the LPSC, contrary to La. R.S. 24:518, had refused to furnish the Legislative Auditor with records that the he has a right to inspect and examine; that the LPSC and its agents and employees have no discretion in regard to producing the documents needed by the Legislative Auditor to conduct the audit; and accordingly, the Legislative Auditor is entitled to a writ of mandamus. In addition to the petition, the court was furnished with an order requiring the LPSC to show cause within two (2) to ten (10) days from service why the petition for writ of mandamus should not be granted. The trial court signed the order, directing the LPSC to show cause on November 22, 2002 at 9:30 a.m. why the petition for writ of mandamus should not be granted.
*652 The LPSC filed a motion to continue the hearing on the rule to show cause, advising the court that the commission's secretary had received the petition at approximately 11:00 a.m. on Wednesday, November 20, 2002, and that the hearing scheduled for Friday, November 22, 2002 was less than forty-eight hours from the date of service. Further, the LPSC advised the court that all of the information sought by the Legislative Auditor was secured under lock and key; that the LPSC can only act by a vote of a majority (three) of its members; that the commission had a meeting scheduled for November 26, 2002 at which time it would consider the matter; and that the Legislative Auditor was addressing the commission at that meeting to discuss auditing issues. The LPSC prayed that the hearing on the petition for writ of mandamus be continued until a date no sooner than November 27, 2002. The LPSC also filed exceptions of no cause of action and improper use of summary proceedings.
The trial court heard arguments on the motion for continuance and the exceptions on the morning of November 22, 2003, in conjunction with the hearing on the petition for writ of mandamus. The LPSC's motions and exceptions were denied and the writ of mandamus was ordered. The court also indicated that three days would be allowed in which to seek a writ to the court of appeal. The Legislative Auditor's office then asked the court if they could review the e-mails that afternoon, after the judgment was signed. The LPSC argued that the auditors should not be allowed to review the e-mails during the three days that the LPSC had to seek writs. The court gave the LPSC until later that afternoon to argue for a stay of the judgment, which would be necessary to accomplish the objective of denying access to the e-mails. The record indicates that the matter was later resumed in chambers.
The motion and order for stay of judgment pending consideration of application for writs was granted and signed by the trial court, staying the judgment until Monday, November 25, 2003 at 1:00 p.m. However, a motion and order for suspensive appeal, filed by the LPSC at 3:50 p.m. on November 22, 2002 was denied that same day.
A request for expedited consideration and emergency stay was submitted to this court along with the application for supervisory writs from the trial court's denial of the suspensive appeal on November 25, 2002. Initially, a stay of all proceedings was ordered and subsequently the writ was granted and the district court was ordered to grant the suspensive appeal.[2] Motions to file amicus briefs on behalf of the Department of Transportation and Development and Jerry Pepper, in proper person, were granted.
The LPSC asserts that the issue presented in this appeal is whether documents protected by the attorney-client work product and deliberative process privileges must be disclosed to the Legislative Auditor in connection with a "Performance Audit." The Legislative Auditor challenges this, asserting that the trial court only heard arguments and received evidence on the authority of the Legislative Auditor to review the e-mail records of the LPSC. His brief offers law and argument on this issue, as well as briefing the privilege issue asserted by the LPSC.

LAW AND ANALYSIS
The Legislative Auditor asserts that his office has the authority to view all documents while performing an audit pursuant *653 to La. R.S. 24:513 A.(1)(a), which provides in pertinent part:
the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films, tapes, and any other forms of recordation of all auditees, including but not limited to computers and recording devices, and all software and hardware which hold data, is part of the technical processes leading up to the retention of data, or is part of the security system.
The Legislative Auditor contends that there were no exclusions by the Legislature in the authority granted to him to conduct an audit. Further, he asserts that this authority is effective over all documents in whatever form "whether confidential or otherwise," pursuant to La. R.S. 24:513 H.; noting, however, that he is required by the same statute to keep confidential any documents, data, or information deemed confidential by law.
The LPSC contends that while the language cited by the Legislative Auditor is in the statute, the courts have never interpreted the statute. Our review of the jurisprudence relating to the Legislative Auditor's office has not revealed any cases interpreting La. R.S. 24:511 et seq, and specifically La. R.S. 24:513. Therefore, we approach the issue res nova, and our decision will be dependent on interpretation of the applicable statutes.
Statutory interpretation is the province of the judicial branch of government. See Louisiana Civil Code Chapter 2; Louisiana Revised Statutes Chapter 1; Lasyone v. Phares, XXXX-XXXX, p. 4 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1071, writ denied, XXXX-XXXX (La.10/14/02), 827 So.2d 423. It is performed as required by civil code articles, statutes and well-established jurisprudential rules.
When a law or ordinance is clear and free from all ambiguity, it must be given effect as written. When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. (Citations omitted.)
Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984).
The position of the Legislative Auditor is that an auditee, in this case the LPSC, is required by law to produce anything requested by the auditor during an audit. Because the auditee has no discretion, and has a legal requirement to comply with the auditor's requests for production, a mandamus was the proper procedural device for compelling production, in this case, of the e-mails. Mandamus is a summary proceeding, which is *654 defined as a writ that may, among other things, be used to direct a public officer to perform ministerial duties required by law. La. C.C.P. arts. 3781, 3861 and 3863; see Reed v. La. Board of Pharmacy, 96-1792, p. 5 (La.App. 1 Cir. 9/17/97), 700 So.2d 926, 928. It is an extraordinary remedy, which must be used by the court sparingly  only to compel action that is clearly provided by law, where it is the only available remedy or where delay by the use of any other remedy would cause injustice. La. C.C.P. art. 3862; Allen v. St. Tammany Parish Police Jury, 96-0938, p. 4 (La.App. 1 Cir. 2/14/97), 690 So.2d 150, 153, writ denied, 97-0559 (La.4/18/97), 692 So.2d 455. Mandamus lies only when a public official refuses to perform a duty the law clearly states he must perform. Bye v. Board of Trustees of Police Pension Fund of City of New Orleans, 274 So.2d 855, 856 (La.App. 4 Cir.1973). It never issues in doubtful cases. State ex rel. Neighborhood Action Committee v. Edwards, 94-0630, p. 4 (La.App. 1 Cir. 3/3/95), 652 So.2d 698, 700.
Our review of the statutes establishing the duties and powers of the Legislative Auditor reveals that mandamus is not the proper procedural vehicle to compel the production of the e-mails sought by the Legislative Auditor. Louisiana Revised Statutes 24:513 L(1) provides in pertinent part:
In the performance of his duties the Legislative Auditor, or any member of his staff designated by him, may compel the production of public and private books, documents, records, papers, films, tapes, and electronic data processing media. For such purpose the legislative auditor and the chairman of the Legislative Audit Advisory Council may jointly issue a subpoena for the production....
We do not think the use of the permissive "may" indicates that an alternative method of compelling production is mandamus. The legislature specifically provides for the use of mandamus to compel the filing of sworn financial statements in La. R.S. 24:514 H. The statute makes clear that in the event the Legislative Auditor's office needs documentation to conduct an audit, and the auditee does not provide it, it may be sought through the courts by subpoena.
Further, in this case the Legislative Auditor was conducting a performance audit pursuant to La. R.S. 24:522, The Louisiana Performance Audit Program. This statute requires the approval of the Legislative Audit Advisory Council for such an audit to be scheduled.[3] Louisiana Revised Statutes 24:551 et seq., which relates to the Legislative Audit Advisory Council provides in La. R.S. 24:554 A(1):
The council shall have the power and authority to hold hearings, to subpoena witnesses, administer oaths, compel the production of books, documents, records, and papers, public and private, to order the compiling and furnishing to the legislative auditor of the sworn statements and actuarial valuations which are required by R.S. 24:514, to petition directly, or through a representative authorized by the council, the courts for writs of mandamus to order the compiling and furnishing of the sworn statements and actuarial valuations required by R.S. 24:514, and to do all other things necessary to advise, aid, and assist the legislative auditor in carrying out the duties and responsibilities of his office.
*655 The power to "compel the production" is, as we have shown, by subpoena. While the LPSC did file an exception raising an objection to the use of the summary proceeding, it understandably did not seek writs from the trial court's denial of its procedural objection since the substance of the matter was adjudicated at the same time. However, we note that the mandamus proceeding was not lawful, regardless of whether or not the LPSC could exercise discretion in producing information requested by the Legislative Auditor.
The Legislative Auditor asserts that, cloaked with specific constitutional[4] and statutory authority, he was conducting a performance audit of the LPSC, "a part of the executive branch of state government." Consistently throughout his brief, he claims his authority derives from the constitution and statutes. The constitution, however, does not grant any authority to the Legislative Auditor, it simply provides for the office as follows:
There shall be a legislative auditor responsible solely to the legislature. He shall serve as a fiscal advisor to it and shall perform the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions. He shall be elected by the concurrence of a majority of the elected members of each house and may be removed by the concurrence of two-thirds of the elected members of each house.
La. Const. of 1974 art. III, § 11.
The duties and powers of the Legislative Auditor's office are provided by statute, and its authority is limited by the constitution.[5]
The Legislative Auditor further maintains that the statutory program under which the office was functioning[6] "requires evaluation of the underlying assumptions on which the LPSC operates."[7] This is incorrect. The program was created to identify and plan for the state's long-term needs in addition to finding solutions to present fiscal problems. La. R.S. 24:522 A. However, it does not "require" the Legislative Auditor to perform the functions it is attempting in this case. Louisiana Revised Statutes 24:522 C. provides:
In accordance with this program and the powers and duties otherwise provided by law, including approval of the Legislative Audit Advisory Council, the legislative auditor shall provide the legislature with evaluation and audit of the functions and activities of the agencies of state government. Such evaluations and audits shall be based on standards appropriate for each evaluation or audit. To accomplish this, the legislative auditor may:
(1) Evaluate the basic assumptions underlying any and all state agencies and the programs and services provided by the state to assist the legislature in identifying those that are vital to the best interests of the people of the state of Louisiana and those that no longer meet this goal. (Emphasis added.)
Assuming, as we must, that the emphasized language in the statute was not meaningless or useless, we believe it served the purpose of noting distinctions in evaluations and audits, and requires the *656 Legislative Auditor to conduct evaluations/audits accordingly. Therefore, evaluations/audits may serve any of the ten purposes listed in R.S. 24:522 C., if they are appropriate. What is "appropriate" will vary, depending on the auditee, and on the authority the legislature has to oversee its activities. We also assume that the legislature was mindful of the constitutional limitations on their oversight authority imposed by separation of powers.[8] Indeed, the statute, considered in its entirety, suggests that they were acutely aware of this.
Louisiana Revised Statute 24:522 D(2) provides:
All state agencies shall develop specific goals and objectives for each of their programs to include measures of performance. They shall report on program goals and objectives in developing annual budgets and shall submit such information to the legislature as part of the appropriations process.
Also on the subject of performance, we note that 24:522 C(10) provides that the Legislative Auditor may:
Evaluate the methods used by each agency in the estimation, calculation, and reporting of its performance, and evaluate the actual outcomes of each agency's performance with regard to its performance indicators as defined in R.S. 39:2 and provide agencies with information relative to the methods used to evaluate such performance.
A "performance indicator" as defined in La. R.S. 39:2 means:
a statement identifying an activity, input, output, outcome, achievement, ratio, efficiency, or quality to be measured relative to a particular goal or objective in order to assess an agency's performance. Performance indicator shall also mean measurement of any other aspect of performance as determined by rule issued by the commission of administration under the provisions of the Administrative Procedures Act.
The Legislative Auditor notes that the LPSC is part of the executive branch of government, however, he does not appear to recognize, as the legislature clearly did, the consequences of this fact. The program statutorily created to evaluate the performance of state agencies required the agencies to develop goals and objectives and to measure the performance of their programs. The Legislative Auditor's function in the process is to "evaluate the methods used by each agency in the estimation, calculation, and reporting of its performance." It is not his function to evaluate, verify and analyze the communications between employees of a particular agency, the entities they regulate and the citizens as a whole when that agency is an executive branch office. We interpret the statute to thus define the role of the Legislative Auditor because that is what the words of the statute require. To accept *657 the position put forth by the Legislative Auditor that his goal is to "evaluate the effectiveness of the agency as a whole and of its particular programs, policies, services, and activities," would raise constitutional issues that are not otherwise inherent in the statute.
The record shows an investigative auditor testified that there were three audits in process at the LPSC: a financial audit, a performance audit and an investigative audit. The court was advised that an investigative audit is initiated by the receipt of an allegation of some type of wrongdoing or abuse at the agency, including the possibility of criminal misconduct.[9] We find no definition of, or authority for, an investigative audit into alleged criminal activity in the statute.[10] Significant constitutional issues would be created in that context.[11] However, this issue was not briefed, so we assume that the Legislative Auditor is not maintaining that his entitlement to information differs in the context of an investigative as opposed to a performance audit and our analysis is limited to the performance audit.
The issue before us is whether the LPSC may assert a privilege, either attorney-client or deliberative process, to prevent the Legislative Auditor from having access to communications within their office. The trial court stated that the question before it was whether the attorney-client privilege exists, how far it exists, and what happens when the executive branch agency asserts it and the legislative branch agency demands otherwise. Therefore, the contention of the Legislative Auditor that the only issue before us is whether his office has the right of access to e-mails because that was the only issue on which the court took evidence is erroneous. The issue of the assertion of privilege was well briefed by the Legislative Auditor. It is his position that the privileges asserted by the LPSC are, in fact, the privileges of the State and the State is the client in the attorney-client role described by the LPSC. In the alternative, he argues that if the LPSC does have the right to claim attorney-client privilege, it has the burden of establishing all essential elements and cannot rely on a blanket assertion of privilege.
We reject the argument that it is the state that is the client, and the only party that can invoke the attorney-client privilege in the matter before us. While it is true that the LPSC is an arm and integral part of the state, that is irrelevant to the issue before us. The communications at *658 issue are between natural persons, an attorney and client, and executive branch officers of the state performing their lawful functions and duties. The "state" can only communicate through one of its officers or employees, and it is these persons who can invoke the privilege. We find absolutely no evidence or indication that the LPSC is attempting to extend the privilege beyond its limits, or to use it as a subterfuge/conspiracy to hinder the administration of justice, or impede the auditor from full review of the e-mail, as asserted by the auditor. According to the record, an auditor requested the e-mails on November 19, 2002, and the Secretary of the LPSC indicated that the records could be reviewed and that a named employee of the LPSC would be available to assist in the examination of them. When the auditor arrived to inspect the e-mails, the employee designated to assist the auditor advised him that the e-mail records of the Public Service Commissioners and of their general counsel would not be immediately available for inspection. Shortly thereafter, the commission's counsel explained that the records could not be released until they could be reviewed to determine whether or not they contained privileged communications. This action taken by the commission's counsel was reasonable, and probably required, in the performance of her duties.
The auditor cites State v. Green, 493 So.2d 1178, 1181 (La.1986) in support of his position that the privilege should be narrowly construed, asserting that:
The privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete...It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.
In Green, the relevant issue involved a client storing physical evidence with his attorney, which the attorney was obligated by law to turn over to law enforcement officers because it was a 9mm gun believed to have been used in the commission of a crime. The case is so dissimilar to what is before us that its language is not persuasive. We do note, however, that the statement on which the auditor relies requires that there be a duty to disclose, to which the privilege is an exception. In the matter before us, we see no reason why the general counsel of the LPSC or its commissioners have a duty to disclose their communications to the Legislative Auditor unless they involve financial transactions and are requested in conjunction with a fiscal audit.
Attorney-client privilege is intended to encourage full and frank communication between attorney's and their clients and thereby promote broader public interests in observance of the law and the administration of justice, as cases too numerous to cite have established. Attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to a lawyer to enable him to give sound and informed advice. See Upjohn Company v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In Upjohn, a magistrate court ordered documents produced as requested by a summons issued by the Internal Revenue Service pursuant to 26 U.S.C. § 7602, in the course of investigating the tax consequences of payments made by a foreign subsidiary of the petitioner to a foreign government. The Supreme Court found that the "narrow scope given the attorney-client privilege by the Court of Appeal not only makes it difficult for corporate attorneys *659 to formulate sound advice when their client is faced with a specific legal problem but also threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." The Court also found that the government had failed to make a sufficient showing of necessity to overcome the protections of the work-product doctrine. The case further established that the applications of privilege, such as attorney-client, should be determined on a case-by-case basis. Although there are many bases on which this case may be distinguished factually, the propositions of law considered above are sound and applicable in the case before us.
Our review of the cases submitted by counsel for both parties, as well as our independent research of the case law, did not disclose any cases that would be strictly controlling here. However, many were instructive, as in the Upjohn case discussed above. Similarly, we found Taxation With Representation Fund v. Internal Revenue Service, 646 F.2d 666, 207 U.S.App.D.C. 331 (1981) to contain an excellent discussion of the deliberative process privilege issue:
The deliberative process privilege protects "confidential intra-agency advisory opinions disclosure of which would be injurious to the consultative functions of government." As was recently noted by Judge Wald in Coastal States [Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C.Cir.1980)], the deliberative process privilege is unique to government and has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. Thus, the privilege protects documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, as well as other subjective documents that reflect the personal opinions of the writer prior to the agency's adoption of a policy. (Citations omitted.)
Taxation With Representation Fund, 646 F.2d at 677, 207 U.S.App.D.C. at 342.
Our review of the cases leaves no doubt that the LPSC has the right to assert both the attorney-client and the deliberative process privileges to prevent access to its records. Therefore, the writ of mandamus was improperly issued by the trial court and is hereby vacated and recalled.

CONCLUSION
Based on the foregoing, we conclude that the writ of mandamus in this matter should not have been issued by the trial court. We find that the LPSC has the right to assert both the attorney-client and the deliberative process privileges to limit access to information sought by the legislative auditor. Therefore, the judgment ordering production of e-mails of the LPSC is vacated. Costs of this appeal in the amount of $785.64 are assessed to the Legislative Auditor.
WRIT OF MANDAMUS VACATED.
NOTES
[1] It is unclear whether the November 26, 2002 meeting was in addition to, or in place of, the November 22, 2002 meeting.
[2] See 2002 CW 2461.
[3] The Legislative Auditor's office asserts, and we accept, that it had this approval. The reference to the Legislative Audit Advisory Council is to note their involvement in the process and the relevance of the cited statute.
[4] La. Const. of 1974, art. III, § 11.
[5] See La. Const. art. II § 2.
[6] Louisiana Performance Audit Program, La. R.S. 24:522 A.
[7] The LPSC is also created in the constitution, and from it derives specified powers and duties. La. Const. art. IV, § 21.
[8] The powers of Louisiana government are divided into three separate branches: legislative, executive, and judicial. La. Const. art. II, § 1. Except as otherwise provided by the constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others. La. Const. art. II, § 2. This section stands for the proposition that "the Constitution is violated only if one branch of government or its members exercises power belonging to either of the others." State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160, 165 (La.1977). This rule has its origin in a desire for each branch to act as a "check" upon the other and, by so doing, ensure a "balanced" government, as was expressed by the Unite States Supreme Court in Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). AFSCME, COUNCIL # 17 v. State, Dept. of Health and Hosp., XXXX-XXXX, p. 5 (La.6/29/01), 789 So.2d 1263, 1267.
[9] We find this perplexing since the function of the Office of Inspector General is to investigate, and help prevent mismanagement, abuse and corruption in the executive branch of state government.
[10] Testimony established that the Legislative Auditor based his investigation on The Governmental Auditing Standards Boards (GASB) SAS 82, which provides that the scope of an audit be expanded if information discloses the possibility of a criminal or illegal act that would reflect in the financial statements. La. R.S. 24:513(5)(a) provides that audits conducted by certified public accountants may be accepted by the legislative auditor's office in lieu of conducting the audit themselves, provided that the audit is "performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide..." and goes on to explain how that guide is produced. It further requires that the LGAG be the standard for audits and reviews of auditees within Louisiana and mandates its publication.
[11] Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions. State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160, 165 (La.1977). See also, State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530.