REQUESTED BY: Senator Chris Beutler Legislative Performance Audit Committee
The Legislative Performance Audit Committee (the "Committee") is created under the Legislative Performance Audit Act (the "Act"), Neb. Rev. Stat. §§ 50-1201 through 50-1215 (2004, Cum. Supp. 2006). The Committee is authorized to conduct performance audits of state agencies and their programs and activities in order to provide an independent legislative assessment of those agencies and programs. Performance audits consider such things as the effectiveness and results of programs, agency economy and efficiency, internal control by state agencies and agency compliance with legal and other requirements. The Committee is assisted in the performance of its duties by the Legislative Auditor and those employees of Legislature within the Legislative Performance Audit Section (the "Section").
The Section recently conducted a performance audit of the School-Based Teacher-Led Assessment and Reporting System ("STARS") managed by the Nebraska Department of Education (the "Department"). In the course of that performance audit, the Department declined to provide the Section with access to eight letters which the Department had previously received from this office pursuant to our review of agency rules and regulations. In declining to provide the Section with those letters, the Department relied on the attorney/client privilege, since the letters did not involve published opinions of the Attorney General. The Department's refusal to provide the Section with those letters led to this opinion request and the four separate questions which you have posed to us. After a brief discussion of the background circumstances in this case, we will discuss each of your questions in turn.
BACKGROUND
We have previously considered questions similar to the matters at issue in your current opinion request. In 2004, you asked us, "[w]hether the Legislative Performance Audit Committee has the inherent authority to access any and all of an agency's information and records, confidential or otherwise, in whatever form they may be." Op. Att'y Gen. No. 04022 at 3, 4 (August 14, 2004). We will quote at length from Opinion No. 04022 because our discussion there is germane to the questions currently under consideration:
We have found no Nebraska cases which directly address the scope of the Committee's authority to obtain "confidential" or privileged information as it goes about its responsibilities to conduct performance audits. Nor are there any Nebraska statutes which directly address that issue. Our research also indicates that there is little law from other jurisdictions which is helpful in this area. Therefore, we would first point out that the law concerning your initial inquiry is not clear. However, we can again offer several observations concerning the Committee's authority to obtain "confidential" information.
* * *
There are also evidentiary privileges set out at Neb. Rev. Stat. " 27-501 through 27-513 (1995) and in common law. Those privileges allow certain communications such as those between an attorney and client or a physician and patient to be kept confidential. Authorities which have considered application of those privileges in the context of audits have come to varying conclusions.
The Attorney General of North Dakota has indicated that privileges set out in the North Dakota Rules of Evidence such as the attorney/client privilege apply only to court proceedings, and do not prevent the release of attorney billing information to the North Dakota State Auditor. Op. N.D. Att'y Gen. No. L-1 (January 17, 1995). Similarly, the Attorney General of Delaware opined that a county auditor could review certain county billing records, even if they included potential information subject to the attorney/client privilege. Op. Del. Att'y Gen. No. 04-IB09 (April 15, 2004). On the other hand, in Kyle v. Louisiana Public Service Commission, 2004 WL 691662 (La.Ct.App. April 2, 2004), the Louisiana Court of Appeals held that the Public Service Commission in Louisiana could assert both the attorney/client privilege and the deliberative process privilege to limit access to information sought by the legislative auditor in Louisiana in connection with a performance audit. And, the Attorney General of Missouri has indicated that in situations where the attorney/client privilege or the attorney work product privilege is properly assertable in pending or imminent litigation, the state auditor is not entitled to access to the litigation records of an agency. Op. Mo. Att'y Gen. No. 74-87 (October 5, 1987).
As a result, it is not at all clear whether evidentiary or common law privileges may be properly asserted with respect to a performance audit by the Committee. Moreover, we would also point out that a performance audit by the Committee is an audit of executive branch agencies by the Legislature and the legislative branch of government. Floor Debate on LB 607, 98th Neb. Leg., 1st Sess. 41 (February 12, 2003) (Statement of Sen. Schimek). That, in turn, raises questions regarding whether certain privileges which might be raised by an executive agency such as the executive privilege or the deliberative process privilege could raise separation of powers issues under art. II, ` 1 of the Nebraska Constitution. For example, the Attorney General of Maryland has indicated that a statute which purports to give a legislative auditor authority to examine any record pertinent to an executive agency's performance cannot exceed those powers allocated to the legislative branch under the constitution and separation of powers principles. Op. Md. Att'y Gen. No. 91-014 (March 18, 1991).
* * *
To summarize the discussion above, we believe that the [State] Auditor's general authority to review records in the context of an audit is broader than that of the Committee. That result may allow an argument that the Committee has less authority to review confidential records than does the Auditor. We also do not believe that the confidentiality provisions of the Public Records Statutes limit access by the Committee to agency records. However, agencies may well be able to assert evidentiary privileges in response to records requests from the Committee in connection with an audit, particularly when the records at issue implicate separation of powers issues and privileges. Some of the current uncertainties in the statutes could be remedied by clarifying legislation. In that regard, we would point out that it may be easier to overcome an evidentiary privilege in an audit by the Committee if there is a statutory provision similar to Neb. Rev. Stat. ` 84-311 (1999) which places strictures on the Committee and its staff with respect to the unauthorized release of information obtained in an audit.
Op. Att'y Gen. No. 04022 at 4-7 (August 14, 2004) (footnotes omitted).
Subsequent to issuance of our Opinion No. 04022 in 2004, the Legislature passed 2006 Neb. Laws LB 588, and that bill is now codified, in part, at Neb. Rev. Stat. § 50-1213 (1) (Cum. Supp. 2006). Section50-1213 (1) added new language to the Nebraska Statutes, and provides:
 The [Legislative Performance Audit] section shall have access to any and all information and records, confidential or otherwise, of any agency, in whatever form they may be, unless the section is denied such access by federal law or explicitly named and denied such access by state law. If such a law exists, the agency shall provide the committee with a written explanation of its inability to produce such information and records and, after reasonable accommodations are made, shall grant the section access to all information and records or portions thereof that can legally be reviewed. Accommodations that may be negotiated between the agency and the committee include, but are not limited to, a requirement that specified information or records be reviewed on agency premises and a requirement that specified working papers be securely stored on agency premises.
Question No. 1: Are there any circumstances in which the attorney-client privilege would bar [Legislative Performance Audit] Section access to an agency's confidential or privileged information and records that relate to a program being audited under the Legislative Performance Audit Act?
We have reviewed the various authorities cited in our Opinion No. 04022, and there has been little change in the status of the law since we wrote that opinion in 2004. There are no Nebraska cases which directly address the precise issue raised in your first question, and authorities from other jurisdictions arrive at differing results when considering an auditor's access to materials subject to the attorney/client privilege. Consequently, we are left with the language of the statutes at issue. The pertinent portion of § 50-1213 (1) provides that the Legislative Performance Audit Section "shall have access to any and all information and records, confidential or otherwise, of any agency, in whatever form they may be, unless the section is denied such access by federal law or explicitly named and denied such access by state law." Neb. Rev. Stat. § 27-503 (1995) codifies the attorney/client privilege.
Both sides of this debate have raised legitimate arguments in support of their positions. Among other things, the Section argues that the language of § 50-1213 (1) is clear, and gives it access to all records, confidential or otherwise, unless it is explicitly denied such access by state law. In that regard, the Section alleges that § 27-503 does not explicitly deny the Section access to information subject to the attorney/client privilege in connection with a legislative performance audit. On the other hand, the Department argues that performance audits are "proceedings" subject to the attorney/client privilege, that one statute should not be interpreted to nullify another, that statutes changing the common law should be strictly construed so as to abrogate the common law no further than required, and that "confidential" as it is used in § 50-1213 (1) is different than "privileged." The arguments raised by both sides make the initial inquiry presented in your opinion request a close question.
In Nebraska, statutes should be construed in pari materia and from their language as a whole to determine the intent of the Legislature. Alegent Health Bergan Mercy Medical Center v. Haworth, 260 Neb. 63,615 N.W.2d 460 (2000). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause or sentence will be rejected as superfluous or meaningless. Sydow v. City of Grand Island,263 Neb. 389, 639 N.W.2d 913 (2002). Absent clear legislative intent, a construction of a statute will not be adopted which has the effect of nullifying another statute. Keller v. Tavarone, 262 Neb. 2,628 N.W.2d 222
(2001). With those various rules of statutory construction in mind, it seems to us that it is possible to construe and apply § 50-1213 (1) and § 27-503 in a way that would give effect to both statutes by taking into account the confidentiality provisions contained in the latter subsections of § 50-1213.
After § 50-1213 establishes the Section's right to access information in connection with a performance audit in subsection (1), additional subsections of that same statute impose confidentiality requirements upon the Section and members of the Committee:
 (2) Except as provided in this section, any confidential information or confidential records shared with the section shall remain confidential and shall not be shared by an employee of the section with any person who is not an employee of the section, including any member of the committee. If necessary for the conduct of the performance audit, the section may discuss or share confidential information with the chairperson of the committee. If a dispute arises between the section and the agency as to the accuracy of a performance audit or preaudit inquiry involving confidential information or confidential records, the Speaker of the Legislature, as a member of the committee, will be allowed access to the confidential information or confidential records for the purpose of assessing the accuracy of the performance audit or preaudit inquiry.
 (3) Except as provided in subdivision (10)(c) of section 77-27,119, if the speaker or chairperson knowingly divulges or makes known, in any manner not permitted by law, confidential information or confidential records, he or she shall be guilty of a Class III misdemeanor. Except as provided in subsection (11) of section 77 — 2711 and subdivision (10)(c) of section 77-27,119, if any employee or former employee of the section knowingly divulges or makes known, in any manner not permitted by law, confidential information or confidential records, he or she shall be guilty of a Class III misdemeanor and, in the case of an employee, shall be dismissed.
 (4) No proceeding of the committee or opinion or expression of any member of the committee or section employee acting at the direction of the committee shall be reviewable in any court. No member of the committee or section employee acting at the direction of the committee shall be required to testify or produce evidence in any judicial or administrative proceeding concerning matters relating to the work of the section except in a proceeding brought to enforce the Legislative Performance Audit Act.
 (5) Pursuant to sections 84-712 and 84-712.01 and subdivision (5) of section 84-712.05, the working papers obtained or produced by the committee or section shall not be considered public records. The committee may make the working papers available for purposes of an external quality control review as required by generally accepted government auditing standards. However, any reports made from such external quality control review shall not make public any information which would be considered confidential when in the possession of the section.
Neb. Rev. Stat. § 50-1213 (2) — (5) (Cum. Supp. 2006) (emphasis added). As a result, the latter subsections of § 50-1213 impose strict confidentiality requirements on the Section, its employees, and on the Committee. And, those confidentiality requirements apply to both to confidential "records" and to confidential "information." In the context of the attorney/client privilege, we read that language broadly to include both actual correspondence or records subject to the privilege, and any privileged information contained in those records. For example, for purposes of a performance audit report, a privileged record such as an informal opinion from this office cannot be quoted or otherwise included in the report. Neither can any conclusions or other information contained in that opinion even be discussed in the report. Disclosure of any of that privileged material would subject the individuals enumerated in §§ 50-1213 (2) — (5) to potential prosecution.
Section 50-1213 (1) clearly grants the Section broad access to confidential information for the purpose of performance audits. However, if the latter subsections of § 50-1213 are also read to strictly prohibit the disclosure and dissemination of confidential information in addition to that broad access, then both § 50-1213 (1) and § 27-503 can be given effect. Such a construction of the statute would allow the Section to have access to confidential material subject to the attorney/client privilege, yet the privilege could be preserved, since the material could not be disclosed. Such a construction of those statutes would also comport with the underlying purpose for the attorney/client privilege, i.e., to promote the freedom of consultation of legal advisors by clients. State v. Hawes, 251 Neb. 305,556 N.W.2d 634
(1996). For those reasons, we believe that the Section can access information and records belonging to an agency which is subject to the attorney/client privilege in connection with a performance audit of that agency or its programs. However, that privileged material may neither be included nor discussed in the Section's ensuing performance audit report. Nor may the Section, its employees, or the Committee disclose that privileged material in any manner contrary to § 50-1213.
We would also point out that the attorney/client privilege can be waived voluntarily by clients. 98 C.J.S. Witnesses § 378 (2006); 81 Am.Jur. 2d Witnesses § 334 (2006). In addition, such a waiver may be created by self-disclosure of confidential information. 98 C.J.S. Witnesses § 385 (2006). However, it is also true that information subject to the attorney/client privilege retains its privileged character until the client has consented to its disclosure. Mayberry v. State, 670 N.E.2d 1262 (Ind. 1996); Buntin v. Becker, 727 N.E.2d 734
(Ind.Ct.App. 2000); 98 C.J.S. Witnesses § 385 (2006); 81 Am. Jur. 2d Witnesses § 334 (2006). Consequently, to avoid any potential issues with waiver and to make it clear that there is no consent to disclose privileged material, we expect that most agencies which provide confidential material to the Section for a performance audit will make it clear by correspondence or otherwise that certain materials are confidential and subject to the attorney/client privilege, and that the agency does not consent to their disclosure. Presumably, that notification will also serve as a designation of confidentiality which will trigger the provisions of § 50 — 1213 (2) — (5).
Question No. 2: Is the approval of the Attorney General required before an agency may release to the Section unpublished communications from the Attorney General's office that relate to a program being audited under the Legislative Performance Audit Act?
In 1995, a state agency requested written advice from this office concerning the agency's obligation to release copies of a numbered informal opinion of the Attorney General.[1] We indicated to that agency in 1995 that release of informal opinions from this office, which might be privileged, is within the discretion of the recipient agency. We believe that a similar rule applies to unpublished communications from this office, including informal opinions, which relate to a program being audited under the Act.
Question No. 3: If attorney-client privilege does not bar access to an agency's confidential or privileged information and records, how long must the Section wait to gain access to them? In other words, at what point can the Section, suspecting an agency of purposely delaying compliance with a request to produce information or records, demand immediate access to such documents?
The Legislative Performance Audit Act contains no provisions which set out time parameters for production of records in connection with a performance audit. Absent any specific time frames in that Act, we assume that an agency undergoing a performance audit may produce records to the Section in a time frame that is reasonable under the circumstances. In addition, it seems to us that agencies undergoing a performance audit also have a reasonable time to review their records or have their records reviewed by counsel to determine if there is a basis to assert the attorney/client or other privileges and to establish confidentiality for particular records under § 50-1213 (2) — (5). As discussed above, such a designation and denial of consent for disclosure may be necessary to prevent any issues of waiver.
Question No. 4. If an agency refuses to grant the Section access to confidential or privileged information and records not specifically excluded under Section 50-1213 (1) of the Act, what remedies are available?
Neb. Rev. Stat. § 50-1215 (Cum. Supp. 2006) provides that persons who willfully obstruct or hinder the conduct of a performance audit are guilty of a Class II misdemeanor. Presumably, that statute would be enforced by this office or the appropriate county attorney. Apart from those criminal sanctions, the Legislative Performance Audit Act contains no remedies for refusal to grant the Section access to confidential or privileged information. If such a refusal occurs, we assume the Section or the Committee could approach this office and ask us to file some sort of legal action to obtain access to the records. Alternatively, the Section or Committee could seek approval from this office to hire outside counsel to proceed with some form of litigation on behalf of the Section.
Sincerely,
JON BRUNING
Attorney General
Dale A. Comer
Assistant Attorney General
Approved by:
___________________________
Attorney General
[1] The Department of Justice issues Official Opinions of the Attorney General which are stamped as such, numbered and dated. Official opinions of the Attorney General are released to the public and otherwise published. In addition, since 1991, the Department of Justice has also issued Informal Opinions of the Attorney General which are marked with an I designation and also given a number. Informal opinions are not published, and are generally considered by this office to be subject to the attorney-client privilege.