WHIPPLE, J.,
dissenting.
11 The majority holds that “an auditee’s duty to provide information to the legislative auditor in connection with an audit is restricted by any evidentiary privileges, whether legislatively enacted or jurispru-dentially created.” In my view, this conclusion is unsupported by law and, more importantly, undermines important public policy considerations: the need and desire for open and transparent accountability regarding the public fisc. Thus, I respectfully dissent from the majority’s decision to reverse the judgment of the trial court, which: (1) had maintained the Legislative Auditor’s exception of no cause of action on the basis that the Department of Insurance had not stated a cause of action for judgment declaring that the records sought by the Legislative Auditor were not discoverable due to the attorney-client and deliberative process privileges and (2) which also had maintained the exceptions of lack of subject matter jurisdiction and/or mootness with regard to the requests for injunctive relief.
According to the Department of Insurance, the legal question presented in this appeal is whether the Legislative Auditor is permitted to | ¡.obtain documents from a state agency (or other entity subject to its audit authority) where those documents are protected by the attorney-client and deliberative process privileges. Thus, this court was called upon to determine whether the law affords the Department of Insurance the right to assert, through a declaratory judgment action, these privileges against the Legislative Auditor’s request for access to Department of Insurance documents in conjunction -with financial and compliance audits.
The Office of the Legislative Auditor is established in the Louisiana Constitution. Article III, Section 11 provides that “[tjhere shall be a legislative auditor responsible solely to the legislature.” This constitutional article further provides that the Legislative Auditor shall serve as fiscal advisor to the legislature and “shall perform the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions.” LSA-Const. art. III, § 11. Certain duties of the Legislative Auditor and his concomitant authority to access, examine, and copy documents in the possession of an auditee are set forth in LSA-R.S. 24:513, which provides, in pertinent part, as follows:
A. (l)(a) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit, or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, *864 political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 11:173(A), municipalities, and all other public or quasi public agencies or bodies, hereinafter collectively referred to as the “auditee”. The scope of the examinations may include financial accountability, legal compliance and evaluations of the economy, efficiency, and effectiveness of the auditee’s programs or any combination of the foregoing. In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films, tapes, and any other forms of recordation of all auditees, including but not limited to computers and recording devices, and all software and hardware which hold data, is part of the technical processes | pleading up to the retention of data, or is part of the security system. This access shall not be prohibited by Paragraph (3) of this Subsection.
[[Image here]]
E. In the performance of his duties as herein stated, the legislative auditor, or any member of his staff designated by him, shall have the power to inspect and to make copies of any books, records, instruments, documents, files, films, tapes, and other forms of recordation, including but not limited to computer and recording devices, of the auditee. He may call upon the auditee and any of its officials and staff for assistance and advice, and such assistance shall be given through the assignment of personnel or in such other manner as necessity requires.
[[Image here]]
I. The authority granted to the legislative auditor in this Section to examine, audit, inspect or copy shall extend to all books, accounts, papers, documents, records, files, instruments, films, tapes, and any other forms of recordation, including but not limited to computers and recording devices, whether confidential or otherwise. However, the.legislative auditor shall comply with any and all restrictions imposed by law on documents, data, or information deemed confidential by law and furnished to the legislative auditor.
[[Image here]]
M. (1) In the performance of his duties the legislative auditor, or any member of his staff designated by him, may compel the production of public and private books, documents, records, papers, films, tapes, and electronic data processing media. For such purpose the legislative auditor and the chairman of the Legislative Audit Advisory Council may jointly issue a subpoena for the production of documentary evidence to compel the production of any books, documents, records, papers, films, tapes, and electronic data processing media regarding any transaction involving a governmental entity.
(Emphasis added).
In furtherance of the statutory authority granted to the Legislative Auditor in LSA-R.S. 24:513 to access, examine, and copy documents of the auditee, the legislature has also imposed upon the auditee the duty to furnish such information to the Legislative Auditor. Specifically, LSA-R.S. 24:513(H) provides that “[a]ll auditees and their officials and staff are Rhereby directed to assist the legislative auditor in his work and to furnish such information, reports, aid, services, and assistance as may be requested, all without any cost or charge.” Additionally, LSA-R.S. 24:518 imposes penalties upon an auditee who *865 refuses to furnish the Legislative Auditor with requested data, “whether confidential or otherwise.” (Emphasis added). Further, LSA-R.S. 24:513(M), which grants the Legislative Auditor and the Audit Advisory Council the authority to issue a subpoena to compel the production of data, further provides that the failure to obey such a subpoena may be punished as a contempt of court. Finally, LSA-R.S. 39:72.1(A) provides that “no funds ... shall be released or provided to any recipient of an appropriation if, when, and for as long as, the recipient fails or otherwise refuses to comply with the provisions of R.S. 24:513.” Thus, these provisions clearly grant the Legislative Auditor broad authority to access, examine and copy documentation of state agencies and departments and seek to compel compliance by an auditee to any requests for access.
In its brief on appeal, the Department of Insurance recognizes that the Legislature has the “prerogative to enact a statute that explicitly requires that documents produced to the [Legislative Auditor] must include documents protected by the attorney-client and deliberative process privileges, and, if such statute passes constitutional muster, auditees will be subject thereto.” Contending that there is a difference between “information that is ‘privileged’ (ie., protected by a recognized legal privilege) and information that is ‘confidential,’ ” it argues that the data to which the Legislative Auditor has been granted access pursuant to LSA-R.S. 24:513 “[cannot] and does not extend to privileged data.” In support, the Department of Insurance argues that while the language of LSA-R.S. 24:513, as set forth in LSA-R.S. 24:513(1), refers to and authorizes the Legislative Auditor to access | ¡¡confidential information, the statute omits (and therefore does not allow for) access to privileged information.
The attorney-client privilege is a statutory creation and is set forth in LSA-C.E. art. 506, which specifically provides that “[a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication” under certain circumstances.[1] LSA-C.E. art. 506(B) (emphasis added). The “deliberative process privilege protects ‘confidential intra-agency advisory opinions disclosure of which would be injurious to the consultative functions of government.’ ” Kyle v. Louisiana Public Service Commission, 2003-0584 (La.App. 1st Cir.4/2/04), 878 So.2d 650, 659, quoting Taxation With Representation Fund v. Internal Revenue Service, 646 F.2d 666, 677 (D.C.Cir.1981) (emphasis added). On review, I find no merit to the Department of Insurance’s assertion that the language of LSA-R.S. 24:513, which grants the Legislative Auditor broad access to information, “confidential or otherwise,” does not extend to “confidential” communications that might otherwise be subject to an evidentiary privilege.
In further support of its position that it has stated a cause of action for judgment declaring that the Legislative Auditor’s access to Department of Insurance data is limited by the attorney-client and deliberative process privileges, the Department of Insurance relies upon this court’s previous opinion in Kyle v. Louisiana Public Service Commission. At the outset, I note *866 that in Kyle, the Legislative Auditor sought to obtain emails from the Louisiana Public Service Commission as part of a performance audit, an |naudit specifically limited in scope by the statute authorizing it.[2] When the Public Service Commission denied the Legislative Auditor access to certain emails until they could be reviewed to insure that they did not contain privileged material, the Legislative Auditor filed a petition for writ of mandamus in the district court, contending that the Public Service Commission had no discretion in regard to producing the documents needed by the Legislative Auditor to conduct the performance audit. Kyle, 878 So.2d at 651.
In reversing the district court’s grant of a writ of mandamus, this court held that mandamus was not the proper procedural vehicle to compel production of the emails sought by the Legislative Auditor. Rather, this court held the Legislative Auditor should have sought the documentation purportedly necessary for a performance audit “through the courts by subpoena.” Kyle v. Louisiana Public Service Commission, 878 So.2d at 654; see LSA-R.S. 24:513(M)(1) (which provides that the Legislative Auditor may compel the production of documentation by jointly issuing a subpoena with the Audit Advisory Council). Thus, because this court determined that mandamus was “not lawful” as a procedure to compel production of the documentation sought, Kyle v. Louisiana Public Service Commission, 878 So.2d at 655, we did not have to reach the substantive issue of whether the Legislative Auditor’s access to documentation could be restricted by any privileges.
17Moreover, although this court thereafter discussed, arguably in dicta, an audi-tee’s right to assert the attorney-client and deliberative process .privileges, this court specifically noted that our analysis of that issue was limited to the particular facts before us, ie., a performance audit, a type of audit not at issue herein.[3] Kyle v. Louisiana Public Service Commission, 878 So.2d at 657-659. Accordingly, because the audits at issue herein were fiscal and compliance audits, I would conclude that any opinions or observations made by the court in Kyle are not dispositive of the issues squarely before us in the present case. As stated above, in the context of a fiscal audit, the access granted to the Legislative Auditor pursuant to LSA-R.S. 24:513, by the very language of the statute, is broad, extending to data that is “confidential or otherwise.” LSA-R.S. 24:513(1).
Nonetheless, the Department of Insurance suggests that this broad grant of authority is nonetheless limited by the attorney-client privilege, an evidentiary privilege set forth in LSA-C.E. art. 506, and *867 the deliberative process privilege, a juris-prudentially created doctrine. I note, as did this court in Kyle, that there is little jurisprudence in this state interpreting LSA-R.S. 24:513. Moreover, I have found no jurisprudence in this state discussing whether the broad access granted to the Legislative Auditor by this statute may be limited by the privileges at issue where the Legislative Auditor seeks the information in the performance of financial and compliance audits.
IsHowever, one opinion I have found to be persuasive and instructive, even though it involved a performance audit rather than a financial or compliance audit, is a 2007 opinion of the Nebraska Attorney General in which he was called upon to determine whether the authority of Nebraska’s Legislative Performance Audit Committee to review the records of state agencies was subject to the attorney-client privilege. Neb. Op. Att’y Gen. No. 07004 (2007). In its 2007 opinion, the Nebraska Attorney General noted that previously in 2004, the Nebraska Legislative Performance Audit Committee had asked the Nebraska Attorney General for an opinion on whether the audit committee had inherent authority to access any and all of an agency’s information and records, confidential or otherwise. Neb. Op. Att’y Gen. No. 07004 at p. 1; Neb. Op. Atty. Gen. No. 04022, p. 2 (2004). In that previous opinion, the Nebraska Attorney General opined that state “agencies may well be able to assert evidentiary privileges in response to records requests from the Committee in connection with an audit,” but noted that some of the uncertainties in the state’s statutes could be remedied by clarifying legislation to overcome an evidentiary privilege in an audit.[4] Neb. Op. Att’y Gen. No. 04022 at p. 4.
In his 2007 opinion, the Nebraska Attorney General further noted that after the issuance of the 2004 opinion, the Nebraska Legislature had amended the Nebraska statutes to specifically provide that the Legislative Performance Audit Section “shall have access to any and all information and records, confidential or otherwise, of any agency.” Neb.Rev.Stat. § 50-1213(1); Neb. Op. Att’y Gen. No. 07004 at p. 3. The Attorney General noted, however, that the attorney-client privilege was also codified in 19Nebraska law in Neb.Rev.Stat. § 27-503. Neb. Op. Att’y Gen. No. 07004 at p. 3. Nonetheless, the Nebraska Attorney General concluded that it was possible to construe and apply § 50-1213(1) and § 27-503 in a way that gave effect to both statutes by taking into account the confidentiality provisions contained in additional subsections of § 50-1213. Neb. Op. Att’y Gen. No. 07004 at p. 4.
Specifically, the Nebraska Attorney General noted that after § 50-1213(1) established the Legislative Performance Audit Section’s right to access information in connection with a performance audit, additional subsections of that same statute imposed confidentiality requirements upon the Legislative Performance Audit Section and the members of the Legislative Performance Audit Committee. The Statute provided, in part: (1) that “any confidential information or confidential records shared with the section shall remain confidential”; (2) that any speaker, chairperson or employee who knowingly divulged such confidential information or records shall be guilty of a misdemeanor; (3) that no member of the committee or section employee acting at the direction of the committee shall be required to testify or produce *868 evidence in any judicial or administrative proceeding concerning matters relating to the work of the section; and (4) that the working papers obtained or produced by the committee or section shall not be considered public records. Neb.Rev.Stat. § 50 — 1213(2)—(5); Neb. Op. Att’y Gen. No. 07004 at pp. 4-5.
Thus, the Nebraska Attorney General concluded that while § 50-1213(1) clearly granted the Legislative Performance Audit Section broad access to confidential information for the purpose of performance audits, latter subsections of the statute strictly prohibited the disclosure and dissemination of that confidential information. Accordingly, the Nebraska 110Attorney General concluded that, giving effect to both § 50-1213 and the attorney-client privilege as set forth in § 27-503, the Legislative Performance Audit Section would “have access to confidential material subject to the attorney/client privilege, yet the privilege could be preserved, since the material could not be disclosed.” Neb. Op. Att’y Gen. No. 07004 at p. 5.
For those reasons, the Nebraska Attorney General opined that, in connection with the performance audit of an agency, the Legislative Performance Audit Section could access information and records belonging to that agency which were subject to the attorney-client privilege. However, like Louisiana’s statutory scheme, the Nebraska statute includes protections from unwarranted disclosures by providing that privileged information could neither be included nor discussed in the Section’s audit report, nor could the Section, its employees, or the Committee disclose that privileged material in any manner contrary to § 50-1213. Neb. Op. Att’y Gen. No. 07004 at p. 5.
Similarly, in the instant case, while the access granted to the Legislative Auditor pursuant to LSA-R.S. 24:513 is broad, extending to data that is “confidential or otherwise,” LSA-R.S. 24:513(1) further provides that the Legislative Auditor must “comply with any and all restrictions imposed by law on documents, data, or information deemed confidential by law and furnished to the legislative auditor.” (Emphasis added); Kyle v. Perrilloux, 2002-1816 (La.App. 1st Cir.11/7/03), 868 So.2d 27, 32-33; La. Op. Att’y Gen. No. 08-0055A (2008). Clearly, this provision places a recognizable duty on the Legislative Auditor to protect the data provided to 1 nhim which is confidential and which may be protected by any evidentiary privilege.[5]
Moreover, pursuant to LSA-R.S. 24:513(G), although the audit reports issued by the Legislative Auditor are public records as provided by LSA-R.S. 44:6, “any documents, data, or information furnished the legislative auditor which are deemed confidential by law” are specifically exempted from the Public Records Law. Kyle v. Perrilloux, 868 So.2d at 32-33. Similarly, LSA-R.S. 44:4(6) exempts from the Public Records Act “any records, writings, accounts, letters, letter books, photographs, or copies or memoranda thereof in the custody or control of the legislative auditor,” thereby further protecting data provided to the Legislative Auditor from disclosure.[6] See La. Op. Att’y Gen. No. 08-0055A at p. 1.
Additionally, as further protection against a breach of the duties set forth in LSA-R.S. 24:513, subsection K of LSA-R.S. 24:513 provides that “[wjhoever violates the provisions of this Section shall be *869 fined not more than one thousand dollars and shall be deemed guilty of malfeasance or gross misconduct in office, and shall be subject to removal.”
Thus, similar to the statutory framework of Nebraska, the legislation of our state granting the Legislative Auditor access to data of state agencies |12in the performance of financial and compliance audits, “whether confidential or otherwise,” can be reconciled with other legislation or jurisprudence establishing evidentiary privileges as to certain confidential information. Because of the protections against disclosure by the Legislative Auditor of confidential information that is provided to the Legislative Auditor by an auditee, I would conclude that an auditee’s duty to provide information to the Legislative Auditor in connection with a financial or compliance audit is not tempered or restricted by any evidentiary privileges, whether legislatively enacted or jurisprudentially created. Accordingly, I find no error in the trial court’s conclusion that the Department of Insurance had failed to state a cause of action for judgment declaring that the type of data enumerated in LSA-R.S. 24:513(A)(1)(a) excludes documents protected by the attorney-client or deliberative process privileges.
For these reasons, I respectfully dissent.

. A "confidential" communication is further defined as a communication that “is not intended to be disclosed to persons other than” those to whom the communication is made in furtherance of obtaining or rendering professional legal services, those reasonably necessary for the transmission of the communication, and, when special circumstances warrant, those who are present at the behest of the client and are reasonably necessary to facilitate the communication. LSA-C.E. art. 506(A)(5).

. The Louisiana Performance Audit Program was created to identify and plan for the state's long-term needs in addition to finding solutions to present fiscal problems and, in furtherance of that goal, empowers the Legislative Auditor to evaluate and audit the functions and activities of the agencies of state government. LSA-R.S. 24:522; La. Op. Att'y Gen. No. 07-0168, p. 3 (2008).

. In Kyle, this court suggested that an auditee had the right to assert both the attorney-client and the deliberative process privileges to limit the Legislative Auditor’s access to information he sought in conducting a performance audit. Stating that the statutorily created Performance Audit Program did not require the Legislative Auditor to perform the functions he was attempting to perform, i.e., evaluating, verifying, and analyzing the communications between employees of a particular agency, the entities it regulates, and the citizens as a whole when that agency is an executive branch office, we questioned whether, under the facts therein, the Public Service Commission had a duty to disclose the communications at issue. Kyle v. Louisiana Public Service Commission. 878 So.2d at 656-657 & 658-659.

. However, the Nebraska Attorney General further opined that the general authority of the Nebraska Legislative Auditor was broader than that of the Performance Audit Committee. Neb. Op. Att’y Gen. No. 04022 at p. 4.

. See also LSA-C.E. art. 502 B, which provides that "[a] claim of privilege is not defeated by a disclosure which ... was compelled.”

. Louisiana Revised Statute 44:4(6) provides: "This Chapter shall not apply ... [t]o any records, writings, accounts, letters, letter books, photographs, or copies or memoranda *869 thereof in the custody or control of the legislative auditor, or to the actual working papers of the internal auditor of a municipality until the audit is complete, unless otherwise provided.” (Emphasis added). The language "or to the actual working papers of the internal auditor of a municipality until the audit is complete” was added by Louisiana Acts 1991, No. 167. In interpreting LSA-R.S. 44:4(6), the Louisiana Attorney General has opined that the language addressing the length of the exemption (z'.e., until the audit is complete) should not apply to the Legislative Auditor. La. Op. Att'y Gen. No. 08-0055A at p. 1. Given that this particular language was added as part of the phraseology exempting working papers of the internal auditor of a municipality, I agree with the Attorney General’s interpretation that the time limitation imposed on this exemption from the Public Records Act does not apply to the Legislative Auditor. See generally Kyle v. Perrilloux, 868 So.2d at 32-33.